590 So.2d 444 (1991)
Osmani SANTA CRUZ and Albert DeLara, Appellants,
v.
NORTHWEST DADE COMMUNITY HEALTH CENTER, INC., Appellee.
No. 90-662.
District Court of Appeal of Florida, Third District.
November 5, 1991.
Rehearing Denied January 15, 1992.
Touby Smith DeMahy & Drake, and Kenneth R. Drake, Miami, for appellants.
McIntosh & Craven and Douglas M. McIntosh and Carmen Y. Cartaya, Ft. Lauderdale, for appellee.
Osborne, McNatt, Cobb, Shaw, O'Hara & Brown and Jack W. Shaw, Jr., Jacksonville, for amicus curiae, Florida Defense Lawyers Ass'n.
Before HUBBART, BASKIN and COPE, JJ.
PER CURIAM.
Plaintiffs Osmani Santa Cruz and Albert DeLara appeal the dismissal of their complaint for medical malpractice against Northwest Dade Community Mental Health Center (Northwest Dade). We affirm.
*445 On August 18, 1986, Oscar Santa Cruz, Osmani's brother, was brought to Northwest Dade by the police pursuant to an ex parte court order describing him as violent and delusional. Oscar was transferred to Highland Park Hospital the next day for further inpatient treatment. In November, Oscar was transferred to Jackson Memorial Hospital. Jackson's staff determined that Oscar needed long-term involuntary care. A court order was subsequently obtained which committed him to South Florida State Hospital. On November 22 or 23, while awaiting transfer to South Florida State Hospital, Oscar escaped from Jackson Memorial Hospital.
Approximately two weeks later, Oscar returned to Northwest Dade. Northwest Dade began treating Oscar with medication on an outpatient basis. On December 31, Oscar shot and injured his brother, Osmani, and Albert DeLara.
The appellants' complaint for medical malpractice against Northwest Dade was dismissed for failure to state a cause of action. This was a correct ruling by the trial court. There is no recognized basis for these appellants to assert a third party claim against the medical facility. They were not patients of the medical staff at Northwest Dade nor did they fit into any exception to the physician/patient requirement. Thus, it is clear there was no special relationship between Northwest Dade and the appellants which would support a claim for medical malpractice.
Santa Cruz and DeLara argue on appeal that Northwest Dade had the duty to detain or hospitalize Oscar under the circumstances of this case. We reject that argument. In Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988), review denied, 553 So.2d 168 (Fla. 1989), the Fifth District agreed with the determination of the trial court that "the law did not impose a legal duty on a psychiatrist to involuntarily take a patient into his custody." Id. at 412.[1] The court went on to analyze Florida's Baker Act, chapter 394, Florida Statutes (1985), and concluded that its language is permissive and suggests no basis for imposing an affirmative obligation on psychiatrists or other mental health professionals to hospitalize a patient or to commence proceedings for an involuntary committal. The court also noted that a psychiatrist may be liable for malicious prosecution for commencing a civil proceeding resulting in an involuntary detention and examination. The court stated that it "decline[d] to force every psychiatrist to navigate between Scylla and Charybdis, in deciding whether or not to involuntarily detain and examine a patient." Id. at 415. We agree and follow Paddock.
Appellants argue, however, that there was a "special relationship" between Oscar and Northwest Dade so that Northwest Dade had a duty to control Oscar's behavior. Again, the argument is incorrect. Restatement (Second) of Torts, section 319, states that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." In this context "one who takes charge" is one who has the right and the duty to control the petitioner's behavior, as would be true in the case of a committed inpatient. See id. comment a, illustration 2; Boynton v. Burglass, at 448; Paddock, 522 So.2d at 416; see also Hasenei v. United States, 541 F. Supp. 999, 1009 (D.Md. 1982). This case does not meet section 319 standards. Oscar was not in Northwest Dade's custody. He had been in its custody, for one day, four months previously. After that one day, the course of evaluation and treatment were handled over a succession of months by other health care providers, as was the involuntary *446 commitment. We decline to find that Northwest Dade owed a duty to plaintiffs to control Oscar's behavior in these circumstances. [2]
Affirmed.
NOTES
[1] In Paddock, the question was whether the psychiatrist owed such a duty to an outpatient, who later attempted suicide. In the present case, the question is whether the psychiatrist owes a duty to third persons (not the patient) to detain or hospitalize the patient. Cf. Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991) (no duty to warn third persons). Here, the complaint alleged that Northwest Dade "knew" that Oscar was chronically, severely mentally ill and posed a continuous threat of violence to [unidentified] others.
[2] The complaint does not allege that Northwest Dade knew that Oscar had been committed to South Florida State Hospital and had escaped from custody. From Northwest Dade's point of view, Oscar was a walk-in outpatient and the Paddock analysis applies.

However, the result would not change as to these plaintiffs even if Northwest Dade did know of Oscar's committed but escaped status. Under the latter set of facts, Northwest Dade may have owed a duty to its own patient, Oscar, to take some action in light of that information, a point not before us. The question presented here is whether Northwest Dade owed a duty to these plaintiffs, as third persons. We answer that question in the negative. Oscar was not committed to Northwest Dade and Northwest Dade had not taken charge of him within the meaning of the Restatement rule. A duty by Northwest Dade to these plaintiffs, as third persons, did not arise.