**Agnes FRASER, Executrix of the Estate of Hector Fraser, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 1495, Docket 93–6334.**

United States Court of Appeals, Second Circuit.

July 15, 1994.

Before NEWMAN, Chief Judge, and JACOBS and LEVAL, Circuit Judges.

### ORDER

This appeal from the United States District Court for the District of Connecticut (Warren W. Eginton, Judge), came on to be heard on the transcript of record from said district court, and was argued by counsel. On consideration of the briefs, appendix, record, and oral argument in this appeal, it is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Connecticut Supreme Court a Certificate in the form attached, together with a complete set of the briefs, appendix, and record filed with this Court by the parties. This panel retains jurisdiction so that, after we receive a response from the Connecticut Supreme Court, we may dispose of the appeal. The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the Connecticut Supreme Court.

### UNITED STATES COURT OF APPEALS
For the Second Circuit

No. 1495—August Term 1993

Filed: July 15, 1994

Docket No. 93–6334

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse in the City of New York, on the 15th day of July, one thousand nine hundred and ninety-four.

PRESENT: HONORABLE JON O. NEWMAN, Chief Judge.

HONORABLE DENNIS G. JACOBS
HONORABLE PIERRE N. LEVAL
Circuit Judges.

AGNES FRASER, EXECUTRIX OF THE ESTATE OF HECTOR FRASER, Plaintiff–Appellant,

—v.—

UNITED STATES OF AMERICA, Defendant–Appellee.

### ORDER

Certificate to the Connecticut Supreme Court pursuant to Local Rule § 0.27 and Conn.Gen.Stat. § 51–199a.

This litigation arises from an episode in which a mental patient fatally stabbed his employer. On June 17, 1985, Hector Fraser ("Hector") was stabbed 37 times by his employee John Doe,[1] and Hector died the next day from the resulting wounds. Plaintiff Agnes Fraser, as executrix of Hector's estate, has brought this action under the Federal Tort Claims Act, alleging that the negligence of defendant United States through its employees at the West Haven Veteran's Administration Medical Center ("VAMC") led to this fatal stabbing.

John Doe first came under the psychiatric care of the United States while serving in the Marine Corps. Diagnosed as psychotic, suffering from schizophrenia, and experiencing

---

1. The District Court granted Doe's request for the substitution of a fictitious name to protect his confidentiality.

delusions that included incidents of violence, Doe was discharged from the military in September 1974. Upon his discharge, Doe returned home to Connecticut and began outpatient treatment at VAMC. From 1976 to 1978, Doe lived in various parts of the country and was treated at least twice on an inpatient basis in California. Having returned to Connecticut, Doe was a voluntary inpatient at VAMC for six months in 1979. Thereafter, through the time of his stabbing of Hector, Doe received outpatient treatment at VAMC. Though Doe continued to suffer from delusions that included violent images over this period, there is no clear evidence that he ever threatened or harmed anyone prior to the time he stabbed Hector. On June 6, 1985, Doe reported to the staff at VAMC that he had stopped taking his medication, and the doctors convinced him to take another form of medication. On Doe's visit to VAMC the next week, his last visit before the June 17 stabbing, Doe reported that he was feeling better on the new medication.

The plaintiff's complaint alleged that Hector's death was "caused by the carelessness, negligence and malpractice" of the defendant. Specifically, the plaintiff claims that VAMC (1) failed to properly treat, diagnose, and monitor Doe, (2) failed to warn others of Doe's violent propensity, and (3) failed to take reasonably necessary actions to control Doe in order to protect others. The District Court, applying Connecticut law, which both parties agree governs the substantive issues of liability in this Federal Tort Claims Act suit, granted the defendant's motion for summary judgment, holding that, as a matter of law, VAMC owed no duty to control Doe or to warn Fraser about Doe. In the absence of either of these two duties, the Court implicitly concluded that there was no failure to treat, diagnose, or monitor.

With respect to the cause of action premised on a breach of a duty to warn Hector, we are inclined to agree with the District Court's reasoning as expressed in Judge Eginton's decision dated November 16, 1993.

The Court found as a matter of law that VAMC had no duty to warn Hector about Doe because, even viewing the facts most favorably to the plaintiff on the defendant's motion for summary judgment, the evidence did not show that it was foreseeable that Doe would commit an act of violence against Hector. The plaintiff asserts that her claim premised on the duty to warn should reach the jury because she presented expert opinion testimony to the effect that the psychiatric staff at VAMC would have discovered a threat of harm to Hector if the staff had asked Doe the right questions. However, in the absence of any objective indicia of a patient's propensity to cause harm, we are unwilling to conclude that, under Connecticut tort law, a claim alleging a breach of a duty to warn should reach a jury solely on the basis of expert opinion testimony suggesting that more searching questioning by the defendant psychotherapist would have revealed the patient's otherwise unforeseeable potential for harm.

With respect to the cause of action premised on a breach of a duty to control, however, we are in some doubt. Recognizing that the pertinent legal issues were a matter of first impression in Connecticut, the District Court noted that the Connecticut cases considering the duty to control the conduct of others have followed the Restatement (Second) of Torts §§ 315–319 (1965). Section 315 of the Restatement implies that there is a duty to prevent a third person from causing physical harm when "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." [2] Section 319 provides that "[o]ne who *takes charge* of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing harm." Restatement (Second) of Torts § 319 (emphasis added). As noted by the Connecticut Supreme Court in *Kaminski v. Town of Fairfield*, 578 A.2d

2. Quoted in full, Restatement (Second) of Torts § 315 reads:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

1048, 1051 (Conn.1990), "Both of the illustrations to § 319 deal with the liability of institutions, such as hospitals, that have formal custodial responsibilities of those in their charge." Relying on these authorities, the District Court held that a voluntary *outpatient* relationship, such as Doe's, is not a "special relationship" that would impose on VAMC a duty to control Doe to protect the public at large.

The plaintiff contends that, even in the absence of a custodial or inpatient relationship, the right or ability to control a third person's conduct is sufficient to give rise to a "special relationship" for purposes of section 315. The plaintiff argues that VAMC had the ability to "control" Doe's tendency to violence even as an outpatient, by such measures as treating and medicating, or by seeking involuntary civil commitment under Conn.Gen.Stat. § 17a–502. It asserts that VAMC therefore had a duty to "control" Doe to prevent him from harming third persons.

As the parties concede and as the District Court noted, there are no Connecticut state cases considering whether a third party attacked by a mental patient may have any causes of action against the patient's psychotherapist. Two Connecticut cases of arguable relevance, *Kaminski v. Town of Fairfield, supra,* and *Kargul v. Sandpiper Dunes Limited Partnership,* 1991 WL 28051 (Conn.Super.Ct. Jan. 29, 1991), do not provide significant insight into Connecticut's views as to whether a psychotherapist could have a duty to control a patient being treated on an outpatient basis.[3] Moreover, there appears to be a split of authority in the law of other jurisdictions as to whether a psychotherapist-outpatient relationship could be

considered "special" so as to create a potential duty on the part of the psychotherapist to control the patient. *Compare Peck v. Counseling Service of Addison County, Inc.,* 146 Vt. 61, 499 A.2d 422, 425 (1985) *and Lundgren v. Fultz,* 354 N.W.2d 25, 27–29 (Minn.1984) *with Santa Cruz v. Northwest Dade Community Health Center, Inc.,* 590 So.2d 444, 445–46 (Fla.Dist.Ct.App.1991), *review denied,* 599 So.2d 1278 (Fla.1992).

We recognize that the claims asserted in this litigation are not likely to arise frequently, a circumstance that weighs against use of the certification procedure. On the other hand, the claims implicate important values in the evolution of a state's tort law, a circumstance that weighs in favor of at least affording the pertinent state supreme court an opportunity to determine state law authoritatively, if it wishes to do so.

Under all the circumstances, we certify the following questions of law to the Connecticut Supreme Court:

1. Does Connecticut recognize a general duty on the part of a psychotherapist to control a patient being treated on an outpatient basis in order to prevent harm to third persons?

2. If so, do the allegations of the complaint in the pending case, as amplified by the submissions of the plaintiff in opposition to the defendant's motion for summary judgment, present a triable jury issue?

Though certifying to the Supreme Court the questions as framed above, we also wish to make clear that we have no desire to restrict the Supreme Court from considering any state law issues that it might wish to resolve in connection with this appeal. Therefore, though our immediate request is for answers to the questions as framed, we

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.

3. In *Kaminski,* the Connecticut Supreme Court held that the parents of an adult mental patient

who injured a police officer did not have an ability to control their child and had not breached a duty to warn. *See* 578 A.2d at 1051–54. In *Kargul,* a Connecticut Superior Court held that a tenant in an apartment building had a basic duty to take reasonable precautions to protect other tenants when she allowed a potentially dangerous person to reside with her. *See* 1991 WL 28051, at *11.

would welcome any guidance the Supreme Court might care to provide with respect to any state law issues presented by this appeal.

FOR THE COURT
/s/ GEORGE LANGE III
George Lange, III, *Clerk*