[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 28, 1996
On February 7, 1994, the plaintiffs, Michael Gillum and Judith Vaughan, in their representative capacities as the administrators of the estates of their respective children, Haruna Gillum (Haruna) and Angelina Bryant (Angelina), filed a two-count complaint against the defendants. James Scott, M.D. and Yale University (Yale), seeking damages for the wrongful death of Haruna and Angelina. The plaintiffs allege that on or about October 9, 1988, Haruna Gillum "became extremely irrational and threatened to kill both himself and Angelina." Revised Complaint, First Count, ¶ 6. In response to these threats, the plaintiffs claim that Haruna's mother "succeeded in having him admitted involuntarily to Yale New Haven Hospital for psychiatric evaluation and treatment." Revised Complaint, First Count, CT Page 5075 ¶ 7. According to the plaintiffs, Haruna was released from Yale New Haven Hospital at his own request, against medical advice, on October 15, 1988.
The plaintiffs further allege that defendant Yale referred Haruna, at his request, to defendant James Scott for outpatient psychotherapy, and that such therapy began on or about October 24, 1988, and continued until Haruna's death on February 11, 1989. On or about January 22, 1989, the plaintiffs allege that Haruna went to the Yale New Haven Hospital emergency room complaining of disorientation, confusion, and vomiting and stating that he had discontinued his psychiatric medicine, Prozac, in the previous week. According to the plaintiffs' allegations, the emergency room staff was instructed by defendant Yale Health Plan to have Haruna report to the "Urgent Visit Clinic." The plaintiffs allege that Haruna never reported to the Urgent Visit Clinic, and that Yale's employees or agents never notified Dr. Scott that Haruna had presented himself in the emergency room confused and disoriented, that he had discontinued his prescribed medication, and that he had failed to report to the Urgent Visit Clinic. Revised Complaint, First Count, ¶¶ 13, 14 and 15.
In addition, the plaintiffs allege that at a scheduled appointment with Scott on January 23, 1989, Haruna evidenced pronounced mental and emotional deterioration, including one or more of the following without limitation: "memory lapses, alcohol abuse, and periods of increased mental disturbance." Revised Complaint, First Count, ¶ 16. In addition, the plaintiffs allege that on or about February 8, 1989, Haruna met with Scott to discuss, among other things, the disruption of his plans to marry Angelina, and also discussed his plans to borrow a car. Finally, the plaintiffs allege that on or about February 11, 1989, Haruna drove to Delaware to visit Angelina, where he killed her with a hunting rifle and then killed himself with the same rifle. Revised Complaint, First Count, ¶ 19.
The first count is directed at Dr. James Scott. The plaintiffs allege that the deaths of both plaintiffs' decedents were proximately caused by the negligence of the defendant, James Scott, in one or more of the following respects: "(a) He failed to properly assess, evaluate and treat Haruna's deteriorating mental and emotional condition . . . particularly in late January and early February 1989; (b) He failed to properly assess and evaluate Haruna's potential for suicidal and homicidal behavior; CT Page 5076 (c) . . . he failed to promptly institute an appropriate regimen of antidepressive and/or antipsychotic medications . . .; (d) He failed to properly respond to Haruna's deteriorating mental condition . . . by hospitalizing him; (e) He failed to properly respond to Haruna's deteriorating mental condition . . . by warning Angelina Bryant of his potential for dangerous behavior; (f) He failed to monitor and respond appropriately to Haruna's drug and alcohol abuse; (g) He failed to properly respond to Haruna's psychiatric history . . .; [and] (h) He failed to comply with the standard of care for similar health care providers." Revised Complaint, First Count, ¶ 20. As a result of Scott's negligence, the plaintiffs claim that the decedents suffered pain, emotional suffering, apprehension of death, and death itself, and also suffered loss of earning capacity and the destruction of their capacity to enjoy life.
The second count is directed at Yale University. Again, the plaintiffs allege that the deaths of both plaintiffs' decedents were proximately caused by Yale University, through its agents, employees, and servants acting within the scope of their employment at the Yale Health Plan, in one or more of the following respects: "(a) . . . failing to transmit to his [Haruna's] treating psychiatrist information which should have alerted him to the gravity of his mental condition; (b) Failing to properly assess Haruna's deteriorating mental condition and to transmit same to his treating psychiatrist; (c) On January 22, 1989, failing to advise his treating psychiatrist of Haruna's presentation in the emergency room; symptoms in the emergency room; report that he had stopped taking Prozac; and failure to return to Urgent Visit when scheduled to do so; (d) On January 22, 1989, failing to make arrangements to transport Haruna Gillum to Urgent Visit; (e) On January 22, 1989, failing to assess and evaluate Haruna Gillum's mental status; (f) Abandoning Haruna Gillum's care and treatment by releasing him without taking appropriate steps to see that his treatment continued; [and] (g) Failing to conform to the standard of care applicable to similar health care providers." Revised Complaint, Second Count, ¶ 20.[1]
On February 22, 1994, Yale University filed an answer denying the plaintiffs' allegations of negligence in the second count of the revised complaint. On April 22, 1994, Scott filed an answer also denying the plaintiffs' allegations in the first count of the revised complaint.
On December 15, 1995, Scott filed a motion for summary CT Page 5077 judgment (#130) as to the "Vaughan complaint"[2] on the grounds that: 1) "defendant Scott does not owe a duty to the coplaintiff Vaughan's daughter since no professional relationship existed between the defendant Scott and the coplaintiff's daughter," and 2) "because Connecticut law does not recognize a Tarasoff cause of action, and even if it did, the case at bar does not fall within the parameters of such an action." Scott Motion for Summary Judgment. In support of this motion, Scott submitted a memorandum of law along with an excerpt from an uncertified copy of Scott's deposition transcript.
On January 31, 1996, defendant Yale University filed a motion for summary judgment (#131) as to the second count of the amended complaint on the ground that Yale owed no legal duty to the plaintiffs decedent, Angelina Bryant, upon which a viable claim for relief could be granted. In support of this motion, Yale submitted a memorandum of law along with excerpts from an uncertified copy of the deposition transcript of Eric Taswell, M.D.
On March 8, 1996, the plaintiffs filed a memorandum of law in opposition to defendant Scott's motion for summary judgment, along with excerpts from an uncertified copy of defendant Scott's deposition transcript.[3]
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995).
In his supporting memorandum, defendant Scott argues that he does not owe a duty to Angelina Bryant, the plaintiffs decedent, because no professional relationship existed between Scott and Angelina. In addition, Scott argues that Connecticut does not recognize the duty of a psychiatrist to warn a third party of the CT Page 5078 dangerous propensities of his patient.
Furthermore, Scott argues that three policy reasons demonstrate why the duty to warn analysis set forth in Tarasoffv. Regents of the University of California, 17 Cal.3d 425,551 P.2d 334, 131 Cal.Rptr. 14 (1976), should not be adopted in Connecticut. First, the defendant claims it is unreasonable to impose a duty to warn third parties upon a psychiatrist where the psychiatrist has no right or ability to control the patient's behavior. Second, Scott claims that because psychiatry is such an inexact science "it is unworkable to impose a duty to warn third parties upon psychiatrists since such a duty requires the psychiatrist `to foresee a harm which may or may not be foreseeable, depending on the clarity of his crystal ball.'" Scott Memorandum, p. 6, quoting Boynton v. Burglass, 590 So.2d 446,450 (Fla.Dist.Ct.App. 1991). Third, Scott claims that theTarasoff doctrine should not be recognized in Connecticut because it violates the psychiatrist-patient privilege set forth in General Statutes § 52-146e, and would "obliterate the `relationship of trust and confidence that is crucial to the treatment of mental illness.'" Scott Memorandum, p. 7, quotingBoynton v. Burglass, supra, 590 So.2d 451.
Even if Connecticut were to adopt the Tarasoff, doctrine, Scott argues that the facts in the present case fail to come within the parameters set forth in Tarasoff. Scott claims thatTarasoff imposes a duty to warn third parties where the psychiatrist knew of a patient's specific threat against a specific victim. According to Scott, he never knew of any threats made by Haruna Gillum; Scott Memorandum, p. 7, citing Scott Deposition, Exhibits A, B, E, and F; and Scott never knew that Angelina would be Haruna's specific victim. Scott Memorandum, p. 8, citing Scott Deposition, Exhibits C, D, E, and F. Accordingly, Scott argues that even if Connecticut were to adopt the Tarasoff,
doctrine, he cannot be held liable for breach of a duty to warn Angelina Bryant because Scott was without knowledge of any specific threats by his patient against any particular victim.
In its supporting memorandum, Yale argues it owed no duty to Angelina Bryant because there is no common-law duty on the part of a hospital or its physicians to control the conduct of a voluntary patient so as to protect third parties from any tortious conduct of the patient. According to Yale, neither of the exceptions in § 315 of the Restatement (Second), Torts to the general rule, that there is no duty to control the conduct of CT Page 5079 another so as to prevent him from causing physical harm to a third person, applies in the present case.
First, because the plaintiffs have neither established nor alleged a special relationship between the defendants and Angelina Bryant, Yale claims that the exception in § 315(b) does not apply. Further, Yale argues that no special relationship, as required by § 315(a), existed between Haruna Gillum and Yale University which would give rise to a duty on the part of Yale to protect Angelina, and that Yale never had control over Haruna so as to be able to restrain his conduct. Absent a duty owed specifically to Angelina Bryant by Yale and the ability on the part of Yale to restrain and control the conduct of Haruna Gillum, Yale argues that there can be no breach, and that Yale is entitled to summary judgment.
Finally, Yale argues that it cannot be liable to Angelina Bryant because Angelina was already aware of Haruna's alleged dangerous propensities. According to Yale, courts have consistently held that a psychiatrist and/or hospital have no duty to warn when the victim is already aware of the dangerous propensities of the patient. Yale Memorandum, p. 11 (citing cases). Yale argues that Angelina was already on notice of Haruna's dangerous propensities as a result of prior alleged assaults by Haruna, and, therefore, that the defendants cannot be held liable for breach of a duty to warn. Further, Yale argues that there is no evidence to suggest that Haruna ever communicated to any psychiatrist or physician employed by Yale University that he intended to harm Angelina, and, therefore, Yale cannot be held liable for failure to warn Angelina of facts which it was unaware.
In their opposing memorandum, the plaintiffs argue that Angelina Bryant was a readily identifiable victim and, therefore, that Dr. Scott had a duty to warn her of Haruna's deteriorating mental condition. According to the plaintiffs, the Supreme Court in Kaminski v. Fairfield supra, 216 Conn. 29, implied, that Connecticut would recognize the Tarasoff doctrine in a proper case — one involving a psychotherapist and an identifiable victim — and that the present case is such a case.
"The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks CT Page 5080 omitted.) RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994). "[T]he test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) Id., 385. "[I]f it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." Id., 385-86. The common-law rule is that, "absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another." Kaminski v.Fairfield, supra, 216 Conn. 33-34, citing 2 Restatement (Second), Torts § 315 (1965).
In Tarasoff v. Regents of the University of California,supra, 551 P.2d 340, the court held that the defendant therapists, who allegedly had knowledge of their patient's intentions to kill the plaintiffs' decedent, could not escape liability "merely because [the victim] herself was not their patient." According to the court, "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." Id. "The discharge of this duty may require the therapist . . . to warn the intended victim or others likely to apprise the victim of the danger, to notify police, or to take whatever other steps are reasonably necessary under the circumstances." Id.
The court in Tarasoff recognized an exception to the general rule that "one person owed no duty to control the conduct of another . . . nor to warn those endangered by such conduct," where "the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct." (Citations omitted; emphasis added.) Id., 343. The court held that the relationship of the defendant therapist to either the intended victim or the patient, who confided his intention to kill another, will suffice to establish a duty of care on the part of the therapist to warn the intended victim or take other appropriate action. Id., 342-43, citing 2 Restatement (Second), Torts § 315 (1965). Accordingly, the court concluded that"once a therapist does in fact determine, or under applicableCT Page 5081professional standards reasonably should have determined that apatient poses a serious danger of violence to others, he bears aduty to exercise reasonable care to protect the foreseeablevictim of that danger." (Emphasis added.) Id., 345. "[T]he therapist has no general duty to warn of each threat. Only if he `does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, [does he bear] a duty to exercise reasonable care to protect the foreseeable victim of that danger." Thompson v. County of Alameda, 27 Cal.3d 741,614 P.2d 728, 734, 167 Cal.Rptr. 70 (1980). "[I]n each instance the adequacy of the therapist's conduct must be measured against the traditional negligence standard of the rendition of reasonable care under the circumstances." Tarasoff v. Regents of theUniversity of California, supra, 551 P.2d 345.
In Kaminski v. Fairfield, supra, 216 Conn. 29, the Connecticut Supreme Court held that the parents of an adult mental patient who injured a police officer did not have an ability to control their child and were not liable to the police officer for failing to warn him of their son's potential for violent and bizarre behavior. The court noted that "[t]he duty to warn arose, in Tarasoff, out of a psychotherapist's knowledge of a patient's specific threats against a specific victim, whom the patient subsequently killed." Id., 37. The court concluded that "Tarasoff is distinguishable both because the plaintiffs did not have a professional relationship with Joseph [their son] . . . and because the defendant was not a specifically identifiable victim." (Citations omitted.) Id. Therefore, the court held that "[w]hatever the merits of Tarasoff; the principle's it establishes have no application to this case." Id. The court inKaminski indicated, however, that, given the appropriate factual circumstances, it might recognize a duty to protect a third person from the conduct of another. Id., 35 ("Arguably, legally designated custodians may also have a common-law duty to protect foreseeable third parties from their wards' aggressive behavior.").
Although the Connecticut Supreme Court has not yet recognized a Tarasoff cause of action, based on the holding in Kaminski v.Fairfield, supra, 216 Conn. 29, it appears that Connecticut would recognize a duty to warn on the part of a psychotherapist under the appropriate factual circumstances, i.e. where there is a professional relationship between the patient and the therapist and where the victim is readily identifiable or a member of an CT Page 5082 identifiable class. The plaintiffs' pleadings assert a professional relationship between the defendants and Haruna Gillum that is sufficient to establish a duty of care on the part of the defendants to warn readily identifiable victims that their patient poses a serious danger of violence. See Tarasoff v.Regents of the University of California, supra, 551 P.2d 343 (a relationship of defendant therapists to either the intended victim or the patient "will suffice to establish a duty of care").
In Fraser v. United States, 30 F.3d 18, 19 (2d Cir. 1994), the court rejected the plaintiffs assertion that her claim premised on the duty to warn should reach the jury. "[I]n the absence of any objective indicia of a patient's propensity to cause harm, [the court was] unwilling to conclude that, under Connecticut tortlaw, a claim alleging a breach of a duty to warn should reach a jury solely on the basis of expert opinion testimony suggesting that more searching questioning by the defendant psychotherapist would have revealed the patient's otherwise unforeseeable potential for harm." Id. With respect to the plaintiffs cause of action premised on breach of a duty to control, however, the court was in some doubt and certified this issue to the Connecticut Supreme Court. Id., 20.
Pursuant to the applicable certification procedures, General Statutes § 51-199a, the Connecticut Supreme Court in Fraserv. United States, 236 Conn. 625, 627 n. 3 (1996), agreed to decide the following question: "In the circumstances of this case, does a psychotherapist have a duty to control a patient on an outpatient basis in order to prevent harm to third persons?" The court concluded that "the medical center had no duty to control its outpatient . . . to avoid personal injury to unidentifable
third persons such as the plaintiff's decedent and, therefore, answer[ed] the certified question in the negative." (Emphasis added.) Id., 627.
The Connecticut court's decision was based in large part on the conclusion that there is no duty except to identifiablepersons. Id, 632. The court confined its "discussion to the question of whether a psychotherapist has a duty to exercise control to prevent an outpatient, who was not known to have beendangerous, from inflicting bodily harm on a victim who wasneither readily identifiable nor within a foreseeable class of
victims . . . because they are the factual circumstances that have been found to exist in the relevant decision of the federal CT Page 5083 court in this case." (Emphasis added.) Id., 630-31. In the absence of any objective indicia of the patient's propensity to cause harm, the federal Court of Appeals found that the plaintiff had failed to establish a factual predicate for a duty to warn.Id., 631. Based on this factual finding by the federal court inFraser, the Connecticut court concluded that the medical center owed no duty to control its patient to prevent the assault of the plaintiff's decedent where the medical center "neither knew nor had reason to know that Doe [its patient] would attack Fraser [the victim] because Fraser was not an identifiable victim, a member of a class of identifiable victims or within the one of risk to an identifiable victim." Id., 637.
Summary judgment is "ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 375, 260 A.2d 596
(1969). As the dissent in Fraser points out, the majority's decision was based on the Court of Appeals' determination that the patient was not known to have been dangerous and that the victim was neither readily identifiable nor within a foreseeable class of victims. See Fraser v. United States, supra, 236 Conn. 631-32. In the present case, such a factual determination has not yet been made. Generally, "[t]he questions of whether [the patient] had a propensity for violence and whether [the victim] was a foreseeable victim are genuine issues of fact to bed resolved by the trier." Id, 639 (Berdon, J., dissenting). Accordingly, the questions of whether Haruna Gillum had a propensity for violence and whether Angelina Bryant was a readily identifiable victim are genuine issues of material fact to bed resolved by the trier, and, therefore, that the defendants' motions for summary judgment are denied.
LICARI, J.