[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE (No. 103)
I. INTRODUCTION
The motion to strike now before the Court attacks the sufficiency of a complaint asserting a violation of the plaintiffs' constitutional rights arising out of the application of Conn. Gen. Stat. § 18-85b (b),[1]
allowing the State to make a claim against an inmate's inheritance for repayment of the costs of incarceration. For the reasons stated below, the motion must be granted.
The plaintiffs, Gary and Sally Alexander, commenced this action by service of process on September 3, 2002. The defendants are the Commissioner of Administrative Services, the Commissioner of Correction, and the Attorney General.
The complaint consists of a single count. Gary Alexander claims that he is a sentenced inmate in the custody of the Commissioner of Correction and is serving a thirty-year sentence commenced in 1986. Sally Alexander (whose first name is spelled "Sally" in the summons and "Sallie" in the complaint) is the executrix of the estate of Alfred Alexander, who died on March 27, 2001. The Milford Probate Court has ruled that Gary's share in the estate is $27,800. Pursuant to Conn. Acts 01-129 (now codified at Conn. Gen. Stat. § 18-85b), Conn. Gen. Stat. § 18-85a, and Conn. Agencies Reg. § 18-85a-2, the defendants have placed a lien against Gary's inheritance in the amount of half of his share.
The complaint alleges that because "[t]he said statutes and regulations did not come into effect until July 28, 1997," the defendants' action violates (1) procedural due process; (2) the Takings Clause of the Fifth Amendment, and (3) substantive due process. The complaint additionally alleges that, "The defendants have not uniformly taxed all sentenced inmates the cost of their incarceration as permitted by the aforesaid laws and regulations, and in attempting to seize the assets of the plaintiff as aforesaid they have acted arbitrarily and have intentionally CT Page 2057 subjected him to disparate treatment in violation of the equal protection clause of the Fourteenth Amendment."
On December 18, 2002, the defendants filed the motion to strike now before the court. The motion was argued on February 10, 2003. The Court will consider the plaintiffs' pleading of each of their constitutional claims.
 II. PROCEDURAL DUE PROCESS
The plaintiffs first allege that the defendants' action violated procedural due process. Because "the requirements of procedural due process are fact-bound," Sassone v. Lepore, 226 Conn. 773, 782, 629 A.2d 357
(1993), those requirements "must be assessed in light of the facts of the particular case." Id. at 783.
The Supreme Court has explained that, "To determine what process is constitutionally due, we have generally balanced three distinct factors: `First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" Gilbert v. Homar, 520 U.S. 924, 931-32 (1997) (quoting Mathews v. Eldridge, 424 U.S. 319 (1976)). The Court will consider these factors in turn.
First, the property interests that the lien in question affect are significant. For an heir such as Gary Alexander, the lien is plainly an obstacle to half of his inheritance. Unless he does something (the measure he can take will be considered in a moment), he will never enjoy the half of his inheritance that is subject to the lien. It is true, as the defendants point out, that this effect does not amount to a complete deprivation of the property in question. It is a temporary lien, not a permanent confiscation. But "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Connecticut v. Doehr,501 U.S. 1, 12 (1991). The temporary or partial nature of this deprivation is, however, a factor that the Court may consider in the final balance.
Second, given the plaintiffs' own allegations and certain concessions made by the defendants in argument, the risk of an erroneous deprivation does not appear to be substantial here. This case is not like the attachment arising out of a cause of action that was at issue inConnecticut v. Doehr. In that case, as the Court explained, attachment CT Page 2058 was premised on a hypothetical "award of damages to the plaintiff which the defendant may not be able to satisfy." 501 U.S. at 12. "The potential for unwarranted attachment in these situations is self-evident." Id.
at 14. In this case, however, the substantive right enforced by the lien arises from a statute of general application. Conn. Gen. Stat. § 18-85b
(b) is applicable "[i]n the case of an inheritance of an estate by any person who is obligated to pay the costs of such person's incarceration in accordance with section 18-85a and the regulations adopted under said section." As a practical matter, the applicability of the statute in a particular case depends on the answer to two factual questions posed by the statutory text: (1) Is the heir in question a "person who is obligated to pay the costs of such person's incarceration"? and (2) Is the lien against the inheritance "in the amount of the costs of incarceration or fifty percent of the assets of the estate payable to the inmate, whichever is less"? In almost all cases, the answer to these questions can be easily and accurately obtained. These are "routine matters of accounting with a low risk of error." Tillman v. LebanonCounty Correctional Facility, 221 F.3d 410, 422 (3d Cir. 2000). In the case at hand, Gary Alexander admits his incarcerated status in his complaint. He does not in any way dispute the computation of the amount of the lien. When asked at argument what facts would be at issue in a procedural due process hearing, he referred the Court to his substantive argument (discussed below) that, under the circumstances of this case, he can never be subject to the burden of Conn. Gen. Stat. § 18-85b (b). Under these circumstances, it is exceedingly difficult to determine that he has suffered any risk of an erroneous deprivation.
Although this last observation is sufficient to address Alexander's specific claim, a more general observation is in order, given a representation by the defendants at the hearing. Liens pursuant to Conn. Gen. Stat. § 18-85b (b) are filed in Probate Court. (The parties agree that the lien in question here has been so filed.) Although §18-85b (b) does not on its face provide for a hearing prior to "distribution," the Probate Court is a forum in which hearings are readily obtainable. The defendants conceded at argument that if any heir against whom a lien is placed requests an adjudication of the factual issues presented, they may request such an adjudication in Probate Court, and at that hearing, the defendants will assume the burden of proof on the contested factual issues. This will, in most cases, be an adequate postdeprivation remedy (and it is certainly an adequate remedy here). Because, as mentioned, these factual issues will in almost all cases be easily and accurately resolved, the risk of an erroneous deprivation is slight to nonexistent.
Third, the Government's interest in this process is the efficient CT Page 2059 repayment of the costs of incarceration. As the Third Circuit observed inTillman v. Lebanon County Correctional Facility, supra, "to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the . . . costs of incarcerating prisoners." 221 F.3d at 422.
After a full consideration of all of the Mathews v. Eldridge factors, the Court finds that, while there is a private interest affected by the official action in question, that interest is temporary and partial. Because there is no significant risk of an erroneous deprivation and because the defendants' interest in efficiency is substantial, the requirements of procedural due process have not been violated.
 III. THE TAKINGS CLAUSE
The plaintiffs' allegation of a Takings Clause violation can be swiftly considered. The interests protected by the Takings Clause "are not offended by revenue measures that operate only to compensate a government for benefits supplied." Massachusetts v. United States, 435 U.S. 444, 462
(1978). "Nor does the Government need to record invoices and billable hours to justify the cost of its services. All that we have required is that the user fee be a `fair approximation of the costs of benefits supplied.'" United States v. Sperry Corp., 493 U.S. 52, 60 (1989) (quoting Massachusetts v. United States, supra, 435 U.S. at 463 n. 19). Under this rationale, the lien authorized by Conn. Gen. Stat. § 18-85b
(b) does not violate the Takings Clause. Dean v. Lehman, 18 P.3d 523,534-35 (Wash. 2001).
 IV. SUBSTANTIVE DUE PROCESS
The plaintiffs' substantive due process right expressly hinges on the commencement of Gary Alexander's sentence. The plaintiffs do not argue that the State can never enforce Conn. Gen. Stat. § 18-85b (b) against any incarcerated heir nor do they argue that the State cannot enforce that statute against incarcerated heirs whose decedents die prior to the effective date of the statute.[2] Instead, the plaintiffs argue that the statute cannot be enforced constitutionally against them because Gary Alexander began his incarceration prior to July 28, 1997, the adoption date of the regulations implementing Conn. Gen. Stat. §18-85a.[3]
Although the complaint does not allege that Conn. Gen. Stat. § 18-85b
(b) is an ex post facto law, the dynamics of the plaintiffs' argument are, as they conceded at the hearing, essentially those of an ex post CT Page 2060 facto law argument. It is, they contend, unfair to visit Gary Alexander with a financial exaction that was not in force at the time of his sentencing. In their view, the financial burdens that can be placed on Mr. Alexander relating to his incarceration are fixed by the laws in force at that time. Because, however, § 18-85b (b) contains no provision that can be properly characterized as punishment for a crime (nor, of course, does the statute affect the length of an inmate's sentence), it is not the equivalent of criminal punishment. See State v.Goad, 754 So.2d 95, 98-100 (Fla.Dist.Ct.App. 2000), and authorities cited therein. It is not an ex post facto law.
"`It is not the province of [the courts] to create substantive constitutional rights in the name of guaranteeing equal protection of the laws.' San Antonio Independent School District v. Rodriguez, 411 U.S. 1,33 . . . (1973)." Hammond v. Commissioner of Correction, 259 Conn. 855,880, 792 A.2d 774 (2002). The invalidation of social and economic legislation on grounds of substantive due process was, notoriously, common a century ago; see Lochner v. New York, 198 U.S. 45 (1905); but is no longer considered an appropriate function of the courts. Statutes assessing inmates for the costs of their incarceration are constitutional. See Tillman v. Lebanon County Correctional Facility,supra. Neither the plaintiffs nor the Court have discovered any contrary authority. There is no substantive due process violation here.
 V. EQUAL PROTECTION
The complaint finally alleges that the Equal Protection Clause has been violated because "[t]he defendants have not uniformly taxed all sentenced inmates the cost of their incarceration" and "they have acted arbitrarily and irrationally and have intentionally subjected him to disparate treatment." This allegation can be swiftly dealt with because of the complete absence of any factual allegations that would support the asserted cause of action.
The plaintiffs' allegation that the defendants have not "uniformly taxed" all sentenced prisoners has a rather antique ring to modern ears. It has long been established that, "our fundamental law, either State or National, contains no provisions either expressed or implied that `taxation must be equal and uniform.'" State v. Travelers Insurance Co.,73 Conn. 255, 266, 47 A. 299 (1900), aff'd., 185 U.S. 364 (1902). No such cause of action is viable in the modern age.
In contrast to the plaintiffs' "uniform taxation" allegation, their claim of a denial of equal protection remains theoretically viable. The problem here is simply that they have not pled any facts to support such a CT Page 2061 claim. "[I]n areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification." Hammond v. Commissioner ofCorrection, 259 Conn. 855, 885, 792 A.2d 774 (2002) (internal quotation marks and citations omitted). See D.A. Pincus Co. v. Meehan,235 Conn. 865, 877, 670 A.2d 1278 (1996). The complaint now before the court leaves considerable doubt as to the identity of the classification complained of. Is the classification one created by the statute or by its administrative enforcement? Has Gary Alexander been singled out in some way or is he one of a number of persons against whom liens have been filed pursuant to the statute in question? (Although the plaintiffs' brief advances a "class of one" theory; see Village of Willowbrook v.Olech, 528 U.S. 562, 564 (2000); the plaintiffs retreated from that theory at argument.) Has he been subjected to "disparate treatment" because he is white, black, left-handed, Republican, or Methodist, or has he been randomly selected in the fashion of a tax audit? The plaintiffs' argument at the hearing seemed to advance the random-selection theory last mentioned, but their complaint does not say so.
No authority cited by the plaintiffs or known to the Court supports the proposition that the tax laws, of which Conn. Gen. Stat. § 18-85b (b) is a specimen, must be enforced with absolute uniformity. People sometimes are selected at random for tax audits, and the Equal Protection Clause, as presently understood, hardly prohibits this practice. Tax collectors ordinarily follow the philosophy of Willie Sutton, which is to go where the money is known to be. If the defendants did so here, it is difficult to fault them. In the absence of some minimal assertion of fact in the complaint, however, all of this is necessarily speculative. Although no factual basis for an equal protection violation is pled here, the plaintiffs are, of course, at liberty to file a new pleading. P.B. § 10-44.
 VI. CONCLUSION
The motion to strike is granted.
Jon C. Blue
Judge of the Superior Court