GARY ALEXANDER ET AL. *v.* COMMISSIONER OF
ADMINISTRATIVE SERVICES ET AL.
(AC 24912)

Schaller, Dranginis and Peters, Js.

Argued October 13—officially released December 28, 2004

*Norman A. Pattis*, with whom, on the brief, was *John R. Williams*, for the appellants (plaintiffs).

*Gregory T. D'Auria*, associate attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellees (defendants).

*Opinion*

PETERS, J. Pursuant to General Statutes § 18-85a,[1] the state of Connecticut is authorized to assess inmates

---

[1] General Statutes § 18-85a provides: "The Commissioner of Correction shall adopt regulations in accordance with the provisions of chapter 54 concerning the assessment of inmates of correctional institutions or facilities for the costs of their incarceration."

for the costs of their incarceration. To enforce this assessment, No. 01-129 of the 2001 Public Acts (now codified at § 18-85b[2] of the General Statutes), and § 18-85a-2[3] of the Regulations of Connecticut State Agencies authorize the state to place a lien on an inheritance received by an inmate. The principal issue in this case is whether, as applied under the circumstances of this case, the statute is unconstitutional because it violates an inmate's right to equal protection of the laws. We agree with the trial court that the defendant has not alleged facts that, if proven, would establish that his constitutional rights have been impaired.

The plaintiffs, Gary Alexander (inmate) and Sallie Alexander, the executrix of the estate of Alfred Joseph Alexander (executrix), brought an action to contest the validity of a lien asserted by the defendants, the commissioner of administrative services and the com-

[2] General Statutes § 18-85b provides in relevant part: "(a) In the case of causes of action of any person obligated to pay the costs of such person's incarceration under section 18-85a and regulations adopted in accordance with said section, the claim of the state shall be a lien against the proceeds therefrom in the amount of the costs of incarceration or fifty per cent of the proceeds received by such person after payment of all expenses connected with the cause of action, whichever is less, for repayment under said section . . . . The proceeds of such causes of action shall be assignable to the state for payment of the amount due under section 18-85a, irrespective of any other provision of law. . . .

"(b) In the case of an inheritance of an estate by any person who is obligated to pay the costs of such person's incarceration in accordance with section 18-85a and the regulations adopted under said section, the claim of the state shall be a lien against such inheritance in the amount of the costs of incarceration or fifty per cent of the assets of the estate payable to the inmate, whichever is less. The Court of Probate shall accept any such lien notice filed by the commissioner or the commissioner's designee with the court prior to the distribution of such inheritance, and to the extent of such inheritance not already distributed, the court shall order distribution in accordance therewith."

[3] Section 18-85a-2 of the Regulations of Connecticut State Agencies provides: "On or after October 1, 1997, inmates shall be charged for and shall be responsible to pay the assessed cost of incarceration, as defined in 18-85a-1 (a)."

missioner of correction, on one half of the inmate's share in the Alexander estate. Pursuant to 42 U.S.C. § 1983, the plaintiffs filed suit for an injunction to prevent the defendants from seizing any of the inmate's inherited funds. In response to the judgment of the trial court granting the defendants' motion to strike the plaintiffs' original complaint, the plaintiffs filed a substitute complaint. The defendants again filed a motion to strike. The plaintiffs appeal from the judgment of the trial court striking their substitute complaint. We affirm the judgment.

The facts are undisputed. The inmate has been incarcerated for thirty years in accordance with consecutive sentences that he began serving in 1975. After the death of his father in 2001, a Probate Court ruled that the inmate's share in the father's estate was $27,800. The defendants have placed a lien of $13,900 on these inherited funds.

The plaintiffs appeal, on two grounds, from the judgment of the trial court striking their complaint. In their view, they had a right to be heard on the merits of their claims that the defendants' lien violated their rights to substantive due process and to equal protection.[4] Because their claims raise issues of law, they are entitled to plenary review by this court. *Kroll* v. *Steere*, 60 Conn. App. 376, 384, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000). We are not persuaded by the plaintiffs' claims.

I

SCOPE OF APPELLATE REVIEW

The scope of our review of the plaintiffs' appeal is limited by the fact that, when the trial court struck the plaintiffs' first complaint, the plaintiffs elected to file a

---

[4] The plaintiffs conceded their inability to pursue their procedural due process claim at oral argument in this court.

substitute complaint rather than to take an immediate appeal. "As a general rule, [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 74, 700 A.2d 655 (1997); *Emerick* v. *Kuhn*, 52 Conn. App. 724, 733, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. *Emerick* v. *United Technologies Corp.*, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). Accordingly, the plaintiffs are precluded from appealing from the merits of the trial court's ruling striking the claims in their substitute complaint unless the allegations set forth therein differ materially from those asserted in their original complaint. See *Parsons* v. *United Technologies Corp.*, supra, 74; *Emerick* v. *Kuhn*, supra, 734.

Our review of the plaintiffs' appellate claims must start, therefore, with an examination of the allegations contained in their original complaint. There, they claimed that the defendants, in deciding to impose the lien, had violated their rights (1) to procedural due process, (2) under the takings clause of the fifth amendment, (3) to substantive due process and (4) under the equal protection clause of the fourteenth amendment.

In their substitute complaint, the plaintiffs set forth additional grounds in support of their prior equal protection claim. They did not, however, amend any other counts of their complaint. Indeed, at oral argument in this court, they characterized the substantive due process argument that they were continuing to pursue as an equal protection claim. We conclude, therefore, that the plaintiffs do not have the right to appeal from the court's decision to strike their claims alleging violations of procedural due process, substantive due process and the takings clause of the fifth amendment. Specifically, we will not address that part of the plain-

tiffs' substantive due process claim that alleged unfairness in imposing a lien on the inmate's inheritance because the lien statute was not yet in force at the time of his sentencing.[5] See *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 74.

The plaintiffs' equal protection claim stands on a different footing. On that issue, the plaintiffs alleged in their original complaint that "[t]he defendants have not uniformly taxed all sentenced inmates the cost of their incarceration as permitted by the aforesaid laws and regulations, and in attempting to seize the assets of the [inmate] as aforesaid they have acted arbitrarily and irrationally and have intentionally subjected him to disparate treatment in violation of the equal protection clause of the [f]ourteenth [a]mendment." In their substitute complaint, the plaintiffs again alleged this paragraph, verbatim, as paragraph 7 (A). They also, however, included new allegations in support of their equal protection claim. In particular, they asserted that:

"(C) The defendants' seizure of the [inmate's] property in this case is arbitrary, and unbounded by any discernable standard in that the defendants have no policy or procedure in place permitting them to identify which inmates have assets, and which inmates do not.

"(D) The defendants' seizure of the [inmate's] property in this case is not the result of any audit, or the product of any policy adopted or followed by the defendants.

[5] In their substitute complaint, the plaintiffs alleged that "[t]he aforesaid seizure of the [inmate's] assets is not a 'tax' within the meaning of any tax code arising under the laws of the [s]tate of Connecticut, but [is], instead, a consequence of incarceration as an inmate." This claim differs from the plaintiffs' earlier substantive due process-ex post facto claim in form alone. Both claims are identical in their allegation that the state unfairly "punished" the inmate when, after he had been incarcerated, it imposed a lien on his inheritance. We conclude, therefore, that the plaintiffs are precluded from challenging the merits of the court's ruling striking their substantive due process-ex post facto claim from their substitute complaint.

"(E) The manner in which the defendants choose to seize property is a function of the notoriety of the inmate or the perceived need of the defendants to make a public statement about being 'tough' on crime and those convicted of crime.

"(F) The decision to seize the [inmate's] property in this case is inspired by malice in that it is not the product of any systemic policy, but is, instead, a function of the defendants' political and policy objectives of appearing to be tough on crime and its consequences.

"(G) In the alternative, the decision to seize the [inmate's] property is entirely random and unguided by any discernable principle recognized by law."

In effect, the plaintiffs' substitute complaint included new allegations that transformed their previous, generic equal protection claim into a colorable claim of selective enforcement. In particular, the plaintiffs alleged that the state unfairly targeted this inmate to the exclusion of other inmates who were similarly situated. We conclude, therefore, that the additional allegations set forth in the plaintiffs' substitute complaint differ materially from the equal protection allegation contained in their original complaint. Accordingly, in this appeal, the plaintiffs are not precluded from challenging the court's ruling striking their equal protection claim from the substitute complaint.

## II

## EQUAL PROTECTION CLAIM

We turn then to the merits of the plaintiffs' equal protection claim. The plaintiffs' argue that the substitute complaint adequately alleged an equal protection violation in its claims of difference of treatment between this inmate and other inmates. The plaintiffs further alleged that the defendants lacked a rational basis for this differential treatment. We do not agree

with the plaintiffs' claim that these allegations were sufficiently fact based to withstand a motion to strike.

In effect, the plaintiffs claim that, as applied to them, § 18-85b[6] is unconstitutional. The plaintiffs bear a heavy burden when they challenge the constitutionality of a statute. "[B]ecause a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *State* v. *Rizzo*, 266 Conn. 171, 291, 833 A.2d 363 (2003).

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985) (citing *Plyler* v. *Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786 [1982]). . . . *Zahra* v. *Southold*, 48 F.3d 674, 683 (2d Cir. 1995). A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LaTrieste Restaurant & Cabaret, Inc.* v. *Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair* v. *Saunders*, 627 F.2d 606, 609–10 [2d Cir. 1980], cert. denied, 450 U.S. 959, 101 S. Ct. 1418, 67 L. Ed. 2d 383 [1981])." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 392–93, 734 A.2d 535

[6] See footnote 2.

(1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). The burden of proving a selective enforcement claim is on the plaintiffs. See id., 391–93.

In their substitute complaint, the plaintiffs alleged that "[t]he defendants have not uniformly taxed all sentenced inmates the cost of their incarceration as permitted by the aforesaid laws and regulations, and in attempting to seize the assets of the [inmate] as aforesaid they have acted arbitrarily and irrationally and have intentionally subjected him to disparate treatment in violation of the equal protection clause of the [f]ourteenth [a]mendment." The trial court concluded that this claim was legally insufficient because the plaintiffs failed to allege specific instances of discrimination among the members of the class of eligible inmates. We agree with the court.

"[T]he requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all *relevant* aspects were treated differently . . . . *Dartmouth Review* v. *Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). . . . *Rubinovitz* v. *Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)." (Emphasis in original; internal quotation marks omitted.) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 672, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001). The plaintiffs' substitute complaint is devoid of any comparison between this inmate and other inmates who also received inheritances but against whom the state chose not to impose liens.

At oral argument, the plaintiffs explained that they chose to forgo specific allegations in their complaint lest such disclosures inform the defendants of the identity of other inmates with potentially lienable inheritances. However understandable these considerations

may be, they do not excuse the plaintiffs' obligation under the law of this state[7] to provide the trial court with pleadings that contain "a plain and concise statement of the material facts on which the pleader relies . . . ." Practice Book § 10-1. See, e.g., *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 629, 646 A.2d 772 (1994); *Hendel's Investors Co.* v. *Zoning Board of Appeals*, 62 Conn. App. 263, 274, 771 A.2d 182 (2001).

On the record in this case, we agree with the trial court that the plaintiffs failed to allege facts sufficient to support their equal protection claim. We conclude, therefore, that the court properly struck the plaintiffs' equal protection claim for failure to state a cause of action.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] By contrast, an action brought under 42 U.S.C. § 1983 in federal court is governed by the federal rules of civil procedure, which permit pleadings to go forward if the pleadings put the other party on notice of potential claims. See, e.g., *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).