******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## STATE OF CONNECTICUT *v.* PETER SEBBEN*

Superior Court, Judicial District of Hartford

File No. CV-15-5039364-S

Memorandum filed March 15, 2019

*Proceedings*

Memorandum of decision on plaintiff's motion for summary judgment. *Motion granted.*

*Peter Sebben*, self-represented, the defendant.

*Judith Brown*, assistant attorney general, for the plaintiff.

*Opinion*

NOBLE, J.

### FACTS

The plaintiff, the state of Connecticut, acting by Scott Semple, Commissioner of Correction, commenced the present case against the defendant, Peter Sebben, to recover $22,330: the alleged cost of the defendant's incarceration. Prior to commencing the present case, the plaintiff filed an application for a prejudgment remedy on April 23, 2015. A hearing was held on July 22, 2015, after which the court, *Wiese, J.*, granted the plaintiff's application in the amount of $22,330.

In its complaint, the plaintiff alleges that the defendant was convicted of certain crimes and that a judge of the Superior Court committed the defendant to the custody of the Commissioner of Correction to be incarcerated. The plaintiff further alleges that the defendant was incarcerated from January 2, 2015, to June 5, 2015; between January 2, 2015, and April 17, 2015, the plaintiff alleges it incurred costs of $15,225 with nothing received from the defendant, and from April 18, 2015, until June 5, 2015, the plaintiff alleges it incurred costs of $7105.

On October 13, 2016, the defendant filed a motion to strike (# 128) the plaintiff's complaint. That motion was denied by the court, *Robaina, J.*, on August 18, 2017; the court articulated its decision in a memorandum of decision (# 142). On September 18, 2017, the defendant filed an answer and special defenses (# 144). The plaintiff filed a motion to strike each of the defendant's special defenses (# 145) on November 14, 2017. On April 19, 2018, in a detailed order (# 145.86), the court, *Robaina, J.*, addressed the plaintiff's motion, granting it in part and denying it part.

On June 29, 2018, the plaintiff filed a motion for summary judgment (# 152), which was accompanied by a memorandum of law as well as several exhibits (# 153). On August 14, 2018, the defendant filed a memorandum of law in opposition to the motion for summary judgment (# 156), which was accompanied by several exhibits. The motion was heard on November 19, 2018.

### DISCUSSION

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his

entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012). "A motion for summary judgment shall be supported by appropriate documents, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents." Practice Book § 17-45 (a).

"Once the moving party has met its burden . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45] . . . ." (Internal quotation marks omitted.) *State Farm Fire & Casualty Co.* v. *Tully*, 322 Conn. 566, 573, 142 A.3d 1079 (2016). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) *Rivera* v. *CR Summer Hill, Ltd. Partnership*, 170 Conn. App. 70, 74, 154 A.3d 55 (2017).

In support of its motion for summary judgment, the plaintiff argues that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Specifically, the plaintiff contends that the defendant is liable for the costs of his incarceration, notwithstanding his denial of liability and his assertion that the plaintiff has failed to state a claim upon which relief can be granted. The plaintiff reasons that it is not only statutorily entitled to seek reimbursement as to the cost of the defendant's incarceration, but also that regulations and case law confirm that this action for reimbursement is available to it. In anticipation of some of the defendant's arguments in opposition, and in view of what the plaintiff perceived as ambiguities in the order of the court, *Robaina, J.*, with regard to its earlier motion to strike the defendant's special defenses, the plaintiff also notes that the defendant's fifth, sixth, ninth, and tenth special defenses should not preclude summary judgment,[1] and, specifically, that the circumstances surrounding the defendant's plea bargain do not create a genuine issue of material fact.

In opposition to the plaintiff's motion for summary judgment, the defendant raises several arguments. First, the defendant argues that he has yet to receive certain requested documents pursuant to a Freedom of Information Act (FOIA) request; see General Statutes § 1-200 et seq.; and that, without this additional discovery,

he is unable to mount a complete objection. Next, the defendant disputes the reliability of the amount that the plaintiff seeks to recover from him, contending that the calculation of the cost of his incarceration is neither accurate nor sufficiently authenticated. The defendant also contends that the Department of Correction's documented noncompliance with the statute at issue should preclude the plaintiff's claim. The defendant then argues that the intent of the statute that forms the basis of the present case indicates that the present case is unjust. In that vein, the defendant further argues that he is being unfairly targeted, noting that the plaintiff has not sought reimbursement for the cost of incarceration from other inmates. The defendant also argues that he had no notice that the plaintiff would seek to recover these costs prior to the application for a prejudgment remedy in April, 2015, and, relatedly, that he had a right in the expectation of finality in his plea. Finally, in opposition to the motion for summary judgment, the defendant also seeks to renew his previously stricken special defenses.

As a threshold matter, pursuant to the law of the case doctrine, the court need not consider every argument raised by the defendant. "The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court . . . may treat that [prior] decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citations omitted; internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 322, 63 A.3d 896 (2013).

In the present case, the court, *Robaina, J.*, has already issued decisions addressing some of the arguments currently raised by the defendant. A review of the court's earlier decisions indicates that both are thorough and well supported. Accordingly, pursuant to the law of the case doctrine, any argument previously disposed of need not be considered, provided there are no new or overriding circumstances. The defendant's bald assertion that he is reviving previously stricken special defenses is not accompanied by any representation of changed circumstances; the reclaiming of these

defenses is, therefore, of no moment. Furthermore, to the extent that the plaintiff notes a potential ambiguity as to the sufficiency of the defendant's ninth and tenth special defenses—those special defenses assert that the statute authorizing the present case is a bill of attainder or an ex post facto law, respectively—it should be noted that those arguments were considered and rejected by the court, *Robaina, J.*, in the decision denying the defendant's motion to strike the plaintiff's complaint. That decision also rejected the defendant's argument that the small number of inmates who have been sued for reimbursement satisfactorily evidences a violation of equal protection. Although this court is entitled to review each of the defendant's arguments, in light of the earlier, persuasive determinations made in the course of litigation, it is not obligated to do so.

Next, "[p]ursuant to General Statutes § 18-85a . . . the state of Connecticut is authorized to assess inmates for the costs of their incarceration." (Footnote omitted.) *Alexander* v. *Commissioner of Administrative Services*, 86 Conn. App. 677, 678–79, 862 A.2d 851 (2004). Section 18-85a provides in relevant part: "(a) The Commissioner of Correction shall adopt regulations . . . concerning the assessment of inmates of correctional institutions or facilities for the costs of their incarceration. (b) The state shall have a claim against each inmate for the costs of such inmate's incarceration under this section, and regulations adopted in accordance with this section, for which the state has not been reimbursed . . . . In addition to other remedies available at law, the Attorney General, on request of the Commissioner of Correction, may bring an action in the superior court for the judicial district of Hartford to enforce such claim, provided no such action shall be brought but within two years from the date the inmate is released from incarceration . . . ." Section 18-85a-1 (a) of the Regulations of Connecticut State Agencies provides that " 'Assessed Cost of Incarceration' means the average per capita cost, per diem, of all component facilities within the Department of Correction as determined by employing the same accounting procedures as are used by the Office of the Comptroller in determining per capita per diem costs in state humane institutions in accordance with the provisions of Section 17b-223 of the general statutes. . . ."

In the present case, the plaintiff has carried its burden of demonstrating that it is entitled to judgment as a matter of law. First, through the defendant's mittimus as well as the affidavit of Jay Tkacz, a fiscal administrative manager with the Department of Correction, the plaintiff has established the fact of the defendant's conviction as well as the duration of his incarceration. Next, Tkacz attests that the per diem rate for the incarceration of any inmate in the fiscal year July 1, 2014 through June 30, 2015, was $145 per day and that the total assessed cost of the defendant's incarceration is there-

fore $22,330. Finally, § 18-85a clearly authorizes the plaintiff to bring an action seeking reimbursement for the cost of the defendant's incarceration, and the present case, which was brought within two years of the defendant's release from incarceration on June 5, 2015, is timely. Contrary to the defendant's argument that the plaintiff has failed to state a claim upon which [relief] can be granted, the plaintiff has therefore established that it is entitled to judgment as a matter of law. To demonstrate otherwise, the defendant must establish that there is a genuine issue of material fact.

As an initial matter, with regard to the defendant's argument concerning his outstanding FOIA request, it is noted that, "[s]hould it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." Practice Book § 17-47. "A party opposing a summary judgment motion . . . on the ground that more time is needed to conduct discovery bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed, including some indication as to what steps that party has taken to secure facts necessary to defeat the motion. Furthermore, under Practice Book § 17-47, the opposing party must show by affidavit precisely what facts are within the exclusive knowledge of the moving party and what steps he has taken to attempt to acquire these facts." (Internal quotation marks omitted.) *Bank of America, N.A.*, *Trustee* v. *Briarwood Connecticut, LLC*, 135 Conn. App. 670, 675, 43 A.3d 215 (2012). "[A] party contending that it needs to conduct discovery to respond to a motion for summary judgment must do more than merely claim the information needed is within the possession of the opposing party." Id., 677.

In the present case, the defendant has neither appropriately nor persuasively supported his argument concerning the need for additional discovery. First, the defendant has not submitted an affidavit in support of this argument. Even if the court were to consider the defendant's assertions,[2] however, there is nothing in the defendant's brief or his supporting documents that specifically indicates what facts are within the plaintiff's exclusive knowledge. The defendant contends that he is awaiting a response regarding a FOIA request regarding e-mails and submits a document indicating that he has requested e-mails and other records from various employees of the Department of Correction that reference him by name or by his inmate number. The defendant has not carried his burden of establishing a valid reason that the plaintiff's motion should be denied or postponed by broadly claiming that the information he needs is possessed by the plaintiff. This argument is therefore unavailing.

The defendant next argues that the amount claimed by the plaintiff in the present case is based upon an unreliable calculation. Specifically, the defendant contends that there are offsets, such as the defendant's payment of taxes and for phone services while incarcerated, that have not been accounted for; that the expenditure of the Department of Correction that was used in the calculation is greater than the expenditure represented in a 2013 report; that he is being overcharged based upon the security level of the facility he was incarcerated in and based upon the services he actually used while incarcerated; that some avenues of income for the state are not accounted for; and that he should not be liable to reimburse the state for the time he spent incarcerated after the Department of Correction declined to release him under transitional supervision. "Section 18-85a directs the commissioner to adopt regulations for the assessment of inmates for the costs of their incarceration. Implicit in this directive is the requirement that any assessment accurately reflect such costs, with the understanding, of course, that absolute precision may be impossible and only a rational basis is required." *State* v. *Strickland*, Superior Court, judicial district of Hartford, Docket No. CV-00-0803071-S (November 19, 2002) (*Beach, J.*) [33 Conn. L. Rptr. 638, 644]. Indeed, as previously noted, the relevant regulation, § 18-85a-1 (a), provides that the assessed cost is an average per capita cost. The defendant cites to no authority, and the court knows of none, mandating that the calculation of incarceration costs take into account each individual inmate's particular circumstances when determining the daily rate. In the absence of evidence that raises a genuine issue of material fact as to the rational basis upon which the calculation rests, the defendant's argument concerning the reliability of the per diem rate must fail.

The defendant also argues that the plaintiff has failed to properly authenticate the amount claimed because Tkacz is unable to attest to the accuracy of the per diem rate; essentially, the plaintiff argues that Tkacz' invocation of the daily rate, which is determined by the Office of the State Comptroller, is hearsay. Hearsay evidence is inadmissible for the purpose of supporting or defeating a motion for summary judgment. See, e.g., *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 534, 923 A.2d 638 (2007). There are, however, exceptions to the hearsay rule, including the business record exception. "To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . [General Statutes] § 52-180. . . . The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or

within a reasonable time thereafter." (Footnote omitted; internal quotation marks omitted.) *State* v. *Polanco*, 69 Conn. App. 169, 181–82, 797 A.2d 523 (2002). Furthermore, "[t]he witness whose testimony provides the foundation for the admission of a business record must testify to the three statutory requirements, but it is not necessary that the record sought to be admitted was made by that witness . . . ." (Internal quotation marks omitted.) Id., 184.

In the present case, to the extent Tkacz' reference to the daily rate could be considered hearsay, it would nevertheless be admissible pursuant to the business records exception. In his affidavit, Tkacz attests that he "has access to the business records of the [Department of Correction] as they pertain to the placement of persons committed to the custody of the Commissioner of Correction . . . and the assessed cost of each such person's incarceration. Said business records of inmates' incarceration and charges are made in the regular course of business of the Department of Correction, and it is in the regular course of business of the Department of Correction to make such records contemporaneously or within a reasonable time thereafter." Tkacz goes on to state that he has examined the business records of the Department of Correction as they relate to the defendant before determining the defendant's assessed costs of incarceration. Within the subparagraphs addressing Tkacz' examination of the pertinent records and the ultimate determination of the amount owed by the defendant, Tkacz attests that "the per diem rate established by the Office of the State Comptroller for the cost of incarceration for the fiscal year [July 1, 2014] through [June 30, 2015] was $145.00 per day." The affidavit establishes, and the plaintiff does not provide evidence to dispute, that, to the extent that the per diem rate is hearsay, it is admissible under the business record exception. Accordingly, the defendant's argument as to the admissibility of the per diem rate fails.

Next, the defendant contends that the Department of Correction's documented noncompliance with the statute at issue, § 18-85a, should preclude the plaintiff's claim. To support this argument, the defendant offers a report from the Auditors of Public Accounts for the fiscal years ending in June 30, 2012, and 2013. This report indicates, inter alia, that the Department of Correction "[had] not complied with statutory requirements dictating 10 [percent] be deducted from deposits made to inmates' accounts to fund a discharge savings account program or to recover the costs of incarceration." The defendant argues that "[t]he Audit Report is documentation the plaintiff . . . is not enforcing claims against each inmate. . . . This is the specific instance where persons similarly situated in all relevant aspects were treated differently." Putting aside the fact that this report concerns years prior to the defendant's

incarceration, the Department of Correction's noncompliance with this statutory provision does not impact the present case. The defendant makes no assertions and presents no evidence that money was or was not deducted from an account kept during his incarceration. Although the Department of Correction's past noncompliance with a provision concerning the recovery of funds for the costs of incarceration may appear superficially relevant to the present case, this report has no application to the specific circumstances of the present case. Accordingly, the defendant's reliance on this report is misplaced.[3]

In that vein, the defendant further argues that he is being unfairly targeted and that the plaintiff has not sought reimbursement for the cost of incarceration from other inmates. He contends that he is being targeted because, inter alia, the defendant has a home and a pension; was a state employee and a "minority inmate"; does not use "entitlement services"; is of retirement age; and was involved in an infamous crime. In support of his argument, the defendant provides a table entitled "Collected Incarceration Costs" from 2011 to 2015 and a printout of Assistant Attorney General Judith Brown's case list from the Judicial Branch website, as of March 26, 2017. The defendant has supplemented both of these documents with his own handwritten calculations. The table of costs includes the defendant's assertion of how many inmates were released per year and the average amount collected per inmate. The case list purports to indicate, again through the defendant's handwritten calculations, how many individuals the state sought to recover incarceration costs from and whether those inmates had trust funds or state or municipal pensions. The defendant further relies upon responses submitted by the plaintiff to various interrogatories establishing, inter alia, the number of reimbursement suits commenced at various times.[4]

Notwithstanding that the defendant's handwritten additions might well be considered unsupported factual assertions, even if the court were to consider the defendant's notes, the records submitted do not establish a genuine issue of material fact. To the extent that the defendant attempts to use these records to emphasize the infrequency with which actions to recover costs of incarceration occur, the argument that infrequency evidences an equal protection violation has been persuasively rejected by the court, *Robaina, J.*, in the course of this litigation already. Moreover, to the extent that the defendant's notes appear to assert that actions have been instituted to recover incarceration costs against other individuals with assets such as trust funds or pensions, that evidence does not indicate that the defendant has been unjustly targeted; rather, it tends to prove the opposite, that reimbursement actions are commenced when it is determined that an inmate or former inmate has adequate assets. Accordingly, the

defendant's arguments on this point are unavailing.

As a final note to the defendant's unequal treatment arguments, the defendant also argues that he was discriminated against because § 18-85a is not income-dependent; the plaintiff, the defendant contends, unfairly targeted the defendant's gross income but did not seek to recover money from other inmates who lacked a state pension. In his brief, the defendant refers to the plaintiff's interrogatories to support this contention. The responses, however, merely indicate that the Department of Correction initiates an action when it learns that an inmate has nonexempt assets of $5000 or more or a government pension, in accordance with General Statutes § 52-321a (b).[5] The defendant's opinions as to the propriety of considering certain assets but not others when commencing an action for the reimbursement of incarceration costs does not create a genuine issue of material fact in the present case.

The defendant then argues that the intent of § 18-85a indicates that the plaintiff's claim against the defendant is unjust. Looking to the legislative history, which is attached as an exhibit to the defendant's opposition, the defendant contends that the intent of the law is to recover the cost of incarceration from inmates with significant financial resources; the defendant argues, however, that he does not have significant resources, and rather, that he is in debt. Even assuming that the defendant has accurately represented his finances, the defendant's assertions are irrelevant to the determination of whether the plaintiff is entitled to judgment as a matter of law in the present case. The intent of the statute is to recover the cost of incarceration from inmates deemed capable of paying, where that capability is statutorily defined: nonexempt assets of $5000 or more or a government pension. In his opposition, the defendant has neither asserted nor demonstrated that he does not meet the statutory criteria. Accordingly, notwithstanding the defendant's characterization of his finances and in view of the statute's overarching purpose, the defendant's argument on this point does not establish a genuine issue of material fact.

Finally, the defendant argues that he had no notice that the plaintiff would seek to recover these costs prior to the application for a prejudgment remedy in April, 2015, and that he had a right in the expectation of finality in his plea. This argument is slightly different from the defendant's earlier contention that his plea bargain constituted a contract—an argument already rejected in the course of this litigation. The defendant cites to no authority, and the court can find none, indicating that a plea bargain must address the costs of incarceration or that notice is required prior to instituting an action to recover the costs of incarceration. Rather, as the statute authorizing the state to recover the costs of incarceration contains no mention of notice

as a requirement, it appears that an action for reimbursement may proceed without notice being given. Accord *Dept. of Administrative Services* v. *Sullo*, Superior Court, judicial district of Hartford, Docket No. CV-05-4017863-S (June 30, 2011) (*Hon. Robert F. Stengel*, judge trial referee) (52 Conn. L. Rptr. 191, 193) (plain language of statutes authorizing state to seek reimbursement for care in state humane institution did not require notice and, therefore, claim was not barred due to lack of notice). The lack of notice to the defendant is therefore not a ground on which to deny the plaintiff summary judgment.

As the plaintiff has demonstrated that it is entitled to judgment as a matter of law and the defendant has not demonstrated that there is any genuine issue of material fact, the plaintiff's motion for summary judgment is granted.

* Affirmed. *State* v. *Sebben*, 201 Conn. App.     ,     A.3d     (2020).

[1] The plaintiff indicates that the defendant's fifth and sixth special defenses alleged that the plaintiff could not bring the present case because the defendant's criminal plea agreement did not address or provide for costs of incarceration. The plaintiff further notes that the defendant's ninth special defense alleges that the collection of the costs of incarceration constitutes a bill of attainder and that the defendant's tenth special defense contends that the statute authorizing the plaintiff to seek reimbursement for the costs of incarceration is an ex post facto law.

[2] "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *Vanguard Engineering, Inc.* v. *Anderson*, 83 Conn. App. 62, 65, 848 A.2d 545 (2004).

[3] Rejecting this argument also disposes of the defendant's contention that the auditors' report invalidates *Alexander* v. *Commissioner of Administrative Services*, Superior Court, judicial district of New Haven, Docket No. CV-02-0468821-S (February 11, 2003) (*Blue, J.*) [34 Conn. L. Rptr. 165], aff'd, 86 Conn. App. 677, 862 A.2d 851 (2004), as valid precedent.

[4] "[A] response [to an interrogatory] can be considered by the court in ruling on a motion for summary judgment because Practice Book § 17-45 specifically states that disclosures are the type of evidence that may be considered as evidence to support a summary judgment motion, and that interrogatories and requests for production fall under the term disclosures." (Internal quotation marks omitted.) *Cavalier* v. *Bank One, N.A.*, Superior Court, judicial district of New Haven, Docket No. CV-03-0480474-S (November 5, 2004) (*Skolnick, J.*). Nevertheless, "[a]n answer . . . to an interrogatory has the same effect as a judicial admission made in a pleading . . . but it is not conclusive . . . ." *Bochicchio* v. *Petrocelli*, 126 Conn. 336, 339–40, 11 A.2d 356 (1940).

[5] General Statutes § 52-321a (b) provides in relevant part: "Nothing in this section or in subsection (m) of section 52-352b shall impair the rights of the state to proceed under section 52-361a to recover the costs of incarceration under section 18-85a and regulations adopted in accordance with section 18-85a from any federal, state or municipal pension, annuity or insurance contract or similar arrangement described in subdivision (5) of subsection (a) of this section, provided the rights of an alternate payee under a qualified domestic relations order, as defined in Section 414 (p) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, shall take precedence over any such recovery. . . ."