EDWARD T. KAMINSKI, ADMINISTRATOR (ESTATE OF
JOSEPH J. KAMINSKI), ET AL. *v.* TOWN OF
FAIRFIELD ET AL.
(13910)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, JS.

Argued June 6—decision released July 31, 1990

*Paul E. Burns,* with whom, on the brief, was *Barbara J. O'Brien,* for the appellant (defendant Ronald Thompson).

*Frank A. Bailey,* for the appellees (plaintiffs).

PETERS, C. J. The sole issue in this appeal is whether a request for mental health assistance to control the behavior of an adult son supports the imposition of tort liability on his parents for injuries inflicted by the son on a police officer accompanying the requested mental health workers to the parents' home. The appeal arises out of a counterclaim to a wrongful death action brought by the plaintiffs, Edward L. and Leokadja Kaminski and Edward T. Kaminski, administrator of the estate of Joseph J. Kaminski, against the named defendant, the town of Fairfield, and the defendant Ronald Thompson (defendant). The wrongful death action sought damages for the fatal shooting of Joseph J. Kaminski by the defendant. The defendant's counterclaim sought damages from the plaintiffs for injuries that he sustained when Joseph struck him with an axe before being shot. The trial court, *Thim, J.,* granted the plaintiffs' motion to strike the counterclaim. The court, *Ballen, J.,* thereafter granted the defendant's motion for judgment on his counterclaim. The defend-

ant filed an appeal, pursuant to Practice Book § 4002 (b), which we transferred here. Practice Book § 4023. We affirm.

In an appeal from a judgment following the granting of a motion to strike a counterclaim, we take the facts to be those alleged in the counterclaim and construe the counterclaim in the manner most favorable to sustaining its legal sufficiency. *Warner* v. *Konover,* 210 Conn. 150, 152, 553 A.2d 1138 (1989); *Michaud* v. *Wawruck,* 209 Conn. 407, 408, 551 A.2d 738 (1988); *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 36, 522 A.2d 1235 (1987). Accordingly, we assume the following factual circumstances concerning the injury sustained by the defendant.

Joseph J. Kaminski, the adult son of the plaintiffs, lived at the Kaminski family home after his discharge from the Fairfield Hills Mental Hospital, where he had been diagnosed as a paranoid schizophrenic. Concerned that Joseph might need to be rehospitalized, his mother called the Greater Bridgeport Community Mental Health Center, where Joseph was an outpatient, to request a community visit to evaluate his mental status. In making her request, his mother informed the mental health center that Joseph had been acting in an increasingly bizarre, agitated and aggressive fashion, that he had allegedly broken a neighbor's car windshield the night before, that he was carrying an axe around with him, and that he had asked his sister whether she was suicidal.

The crisis team of the mental health center responded by having one of its nurses contact the Fairfield police department to obtain an escort for the community evaluation visit. Accordingly, the defendant and Officer Joseph Peddle accompanied nurses Geraldine January and Lowri Jones to the Kaminski home. When the nurses attempted to interview Joseph, he became

increasingly agitated and ran upstairs to his bedroom. The nurses, together with Joseph's mother and the defendant, followed Joseph up to his bedroom and persuaded him to return downstairs. Nonetheless, Joseph's agitation not only continued but was exacerbated by the suggestion that the crisis team would take him to see a doctor at the mental health center. Resisting this suggestion, Joseph again retreated upstairs to his bedroom. When the defendant, in the course of his professional duties, followed Joseph there, Joseph attacked and struck the defendant with an axe, causing severe and permanent injuries to the defendant. The defendant in turn shot and killed Joseph.

The defendant's counterclaim alleged that the plaintiffs had, through their negligence, proximately caused his injuries in three ways. The defendant claimed that the plaintiffs had failed properly to care for and supervise Joseph in permitting him to keep axes when they knew or should have known of his dangerous propensities. The defendant also claimed that the plaintiffs had failed to warn him of Joseph's dangerous and violent propensities and of his possession of several axes. Finally, the defendant claimed that the plaintiffs had failed to take steps to restrain and control Joseph prior to the arrival of the crisis team, when they knew or should have known of his dangerous and violent propensities and should have anticipated that these propensities would be aggravated by the crisis team's visit.

The plaintiffs responded to the counterclaim with a motion to strike, in which they relied on the absence of an allegation citing a common law or statutory basis for holding parents liable for the torts of their child. The defendant's objection to the motion to strike claimed that his counterclaim was legally sufficient because it properly alleged a duty as set forth in the Restatement (Second) of Torts § 319. The trial court, *Thim, J.,* granted the motion to strike without issuing

a memorandum of decision.[1] Thereafter, by agreement of the parties, judgment was rendered for the plaintiffs on the counterclaim in order to enable the defendant to pursue the present appeal.

In his appeal, the defendant has recast the basis for his claim of negligence into two principal contentions. He argues that the plaintiffs are liable in accordance with the rule of law contained in the Restatement (Second) of Torts § 319, which he urges us to adopt as the law of Connecticut in the factual circumstances alleged in this case. Alternatively, he argues that the plaintiffs are liable on the theory of a common law duty to warn of known impending danger. We are persuaded by neither argument.

## I

The defendant relies on the Restatement (Second) of Torts § 319 as the foundation for his claim that the plaintiffs owed him a duty of care because, in permitting their adult but schizophrenic son Joseph to live with them, they undertook a custodial relationship that encompassed responsibility for controlling his behavior. Section 319 provides: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." This court has not previously considered whether to adopt § 319 as an exception to the common law rule that, absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another. See 2 Restatement (Second), Torts § 315 (1965); F. Harper, F. James & O. Gray, The Law of

---

[1] None of the parties ever asked the trial court to articulate the grounds for its decision. A written memorandum of decision in response to a motion to strike is required, under Practice Book § 156, only if "more than one ground of decision is set up [in the motion to strike]."

Torts (2d Ed. 1986) § 18.7; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 56.

Before addressing the merits of the defendant's contention, we must clarify the precise contours of his claim. Correctly, he does not assert that the plaintiffs' alleged duty of care arises directly out of their parental relationship between the plaintiffs and Joseph. At common law, the torts of children do not impose vicarious liability upon parents qua parents, although parental liability may be created by statute; see General Statutes § 52-572;[2] or by independently negligent behavior on the part of parents. *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 256, 268 A.2d 663 (1970). The defendant alleges, therefore, that the plaintiffs are liable to him not because they are vicariously responsible for Joseph's assault but because they are independently responsible for not having prevented Joseph's assault.

The circumstances under which § 319 has been held to impose a duty to control the conduct of another are far removed from the facts of this case. Both of the official illustrations to § 319 deal with the liability of institutions, such as hospitals, that have formal custodial responsibility for those in their charge.[3] Simi-

---

[2] General Statutes § 52-572 provides in relevant part: "(a) The parent or parents or guardian of any unemancipated minor or minors, which minor or minors wilfully or maliciously cause damage to any property or injury to any person, or, having taken a motor vehicle without the permission of the owner thereof, cause damage to the motor vehicle, shall be jointly and severally liable with the minor or minors for the damage or injury to an amount not exceeding three thousand dollars, if the minor or minors would have been liable for the damage or injury if they had been adults."

[3] The two illustrations to the Restatement (Second) of Torts § 319 provide: "1. A operates a private hospital for contagious diseases. Through the negligence of the medical staff, B, who is suffering from scarlet fever, is permitted to leave the hospital with the assurance that he is entirely recovered, although his disease is still in an infectious stage. Through the negligence of a guard employed by A, C, a delirious smallpox patient, is permitted

larly, the reported cases that have recognized a duty to control have generally done so in the context of professional custodians with special competence to control the behavior of those in their charge. Citing § 319, courts have found that third parties have stated a cause of action in negligence against: a prison warden; *Frett* v. *Government of Virgin Islands,* 839 F.2d 968, 975 (3d Cir. 1988); security guards; *Karbel* v. *Francis,* 103 N. Mex. 468, 471, 709 P.2d 190 (1985); a mental hospital and its personnel; *White* v. *United States,* 780 F.2d 97, 103 (D.C. Cir. 1986); *Johnson* v. *Village of Libertyville,* 146 Ill. App. 3d 834, 839, 496 N.E.2d 1219 (1986); *Allentown State Hospital* v. *Gill,* 88 Pa. Commw. 331, 488 A.2d 1211, 1213 (1985); a children's center; *Nova University, Inc.* v. *Wagner,* 491 So. 2d 1116, 1118 (Fla. 1986); and a retirement home. *Garrison Retirement Home Corporation* v. *Hancock,* 484 So. 2d 1257, 1261 (Fla. App. 1985).

These cases suggest that, in the proper factual circumstances, this court may want to consider whether to recognize the principles of § 319 insofar as they impose a special duty upon custodians to control the behavior of their wards. Some custodians already have a statutory tort duty to protect their wards from the wards' self-destructive behavior. See, e.g., *Mahoney* v. *Lensink,* 213 Conn. 548, 563, 569 A.2d 518 (1990). Arguably, legally designated custodians may also have a common law duty to protect foreseeable third parties from their wards' aggressive behavior.

The present circumstances are, however, markedly different. Neither the defendant nor our own research

---

to escape. B and C communicate the scarlet fever and smallpox to D and E respectively. A is subject to liability to D and E.

"2. A operates a private sanitarium for the insane. Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape. B attacks and causes harm to C. A is subject to liability to C."

has disclosed any case in which a parent, merely by making a home for an adult child who is a mental patient, has been held to be "[o]ne who takes charge of a third person" for the purposes of § 319. It would be anomalous, to say the least, to hold that the plaintiffs in this case had "take[n] charge" of Joseph at the very moment when, acknowledging their limited ability and opportunity to control his behavior, they had called the mental health center crisis team for assistance. That call for help distinguishes this case from *Estate of Mathes* v. *Ireland,* 419 N.E.2d 782, 784 (Ind. App. 1981), in which family members were held to have a duty to prevent a deranged and dangerous twenty year old man from abducting and drowning a member of the general public. A familial relationship does not, per se, establish the capacity to control that § 319 envisages as a basis for liability. *Poncher* v. *Brackett,* 246 Cal. App. 2d 769, 771–73, 55 Cal. Rptr. 59 (1966).

On the facts alleged in this case, therefore, § 319 would not furnish a basis for the defendant's counterclaim. Lacking an appropriate factual predicate, we will postpone further inquiry into the adoption of § 319 to another day. We affirm the judgment of the trial court striking the defendant's counterclaim insofar as that counterclaim rested on § 319.

## II

The defendant's counterclaim alternately alleges that the plaintiffs were negligent in failing to warn him of Joseph's "dangerous and violent propensities and that [he] had possession of several axes." Relying on the rule of law stated in *Tarasoff* v. *Regents of the University of California,* 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), the defendant maintains that, like the psychotherapist in *Tarasoff,* the plaintiffs in this case had a duty to warn him, as a foreseeable vic-

tim, of Joseph's potential for violent and bizarre behavior. We disagree.

The duty to warn arose, in *Tarasoff*, out of a psychotherapist's knowledge of a patient's specific threats against a specific victim, whom the patient subsequently killed. Id., 431; see *Thompson* v. *County of Alameda,* 27 Cal. 3d 741, 752–53, 614 P.2d 728, 167 Cal. Rptr. 70 (1980). *Tarasoff* is distinguishable both because the plaintiffs did not have a professional relationship with Joseph; *Nally* v. *Grace Community Church of the Valley,* 47 Cal. 3d 278, 293–96, 298, 763 P.2d 948, 253 Cal. Rptr. 97 (1988); *Rozycki* v. *Peley,* 199 N.J. Super. 571, 578, 489 A.2d 1272 (1984); and because the defendant was not a specifically identifiable victim. See *Brady* v. *Hopper,* 570 F. Sup. 1333, 1338 (D. Colo. 1983), aff'd, 751 F.2d 329 (10th Cir. 1984); *Leedy* v. *Hartnett,* 510 F. Sup. 1125, 1130 (M.D. Pa. 1981); see also *Lipari* v. *Sears, Roebuck & Co.,* 497 F. Sup. 185, 191, 195 (D. Neb. 1980) (foreseeable victims may include members of a class). Whatever the merits of *Tarasoff,* the principles it establishes have no applicability in this case.

The circumstances of this case, furthermore, do not provide any other basis to conclude that the plaintiffs failed in their duty to warn the defendant about Joseph's dangerous propensities. We note two significant uncontroverted facts: (1) the plaintiffs disclosed Joseph's excitable condition to the crisis team when they asked for its intervention; and (2) the defendant, an armed police officer, came to the plaintiffs' home in the course of his professional responsibilities to assist in dealing with the crisis to which the team had been alerted.

With respect to the first consideration, the plaintiffs cannot be faulted for not having repeated their observations of Joseph's behavior to the defendant, when

they had described his symptoms and his possession of axes to other members of the crisis team. The defendant's counterclaim does not allege that the crisis team withheld from him the information about Joseph's condition that was the precipitating factor for the visit to the plaintiffs' home. Having asked for the mental health workers' assistance, the plaintiffs were entitled to assume that the members of the crisis team would take reasonable precautions to discharge their responsibilities. 2 Restatement (Second), Torts § 452. "The failure to warn an invitee of something he already knows is without legal significance." *Warren* v. *Stancliff*, 157 Conn. 216, 220, 251 A.2d 74 (1968); see also *Cairl* v. *State*, 323 N.W.2d 20, 26 (Minn. 1982). Any imperfection in the manner of the plaintiffs' disclosure would be actionable only if their conduct could reasonably be construed to have induced the defendant to rely on a tacit assurance of safety. See *Rubenstein* v. *United States*, 488 F.2d 1071 (9th Cir. 1973); W. Prosser & W. Keeton, supra, p. 207. This is not such a case.

With respect to the second consideration, the plaintiffs cannot be held liable to the defendant for risks that inhered in his presence, as a police officer acting as a trained escort for a mental health team on a visit to a disturbed patient known to be agitated and to have access to axes.[4] "[F]undamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement. . . . This fundamental concept rests on the assumption that governmental entities employ fire-

---

[4] The pleadings disclose the defendant Thompson's professional status. In its counterclaim, the defendant town of Fairfield asserts that the employment of the defendant Thompson "was within the scope of the Workers' Compensation Act, and his injuries arose out of and in the course of said employment." It is further alleged that, "[a]s a result of said injuries, the Town of Fairfield has paid and may be required to pay sums of money for said injuries and for medical care under the terms of the Workers' Compensation Act."

fighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." *Berko* v. *Freda,* 93 N.J. 81, 87, 459 A.2d 663 (1983) (a police officer injured in the pursuit of a stolen car cannot sue the car owner for negligence in leaving the car with keys in the ignition). In accordance with this principle, a police officer has been precluded from suing parents for negligence when he was assaulted by intoxicated guests at a party after having been summoned to quell the disturbance. *Walters* v. *Sloan,* 20 Cal. 3d 199, 202–205, 571 P.2d 609, 142 Cal. Rptr. 152 (1977). Similarly, a police officer struck by another car while assisting a truck driver to gather fallen cargo was not allowed to sue the truck driver for having negligently secured his freight. *Steelman* v. *Lind,* 97 Nev. 425, 427–28, 634 P.2d 666 (1981); see also *Flowers* v. *Rock Creek Terrace Limited Partnership,* 308 Md. 432, 447, 520 A.2d 361 (1987); *Turner* v. *Northwest General Hospital,* 97 Mich. App. 1, 3–4, 293 N.W.2d 713 (1980); F. Harper, F. James & O. Gray, supra, § 27.14 (2); W. Prosser & W. Keeton, supra, §§ 60–61, pp. 413, 431.[5]

For all the reasons stated, the defendant's counterclaim did not allege an actionable breach of a duty to warn on the part of the plaintiffs. The trial court's judgment on the plaintiffs' motion to strike was therefore entirely correct on this ground as well.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] A different rule may obtain, as the Restatement (Second) of Torts § 345, comment (c), Illustration (2) suggests, when a police officer, as an invitee, encounters an unforeseen hazard because of a condition in an area of the landowner's property that is held open for the use of the general public. See *Brady* v. *Consolidated Rail Corporation,* 35 Ohio St. 3d 161, 519 N.E.2d 387 (1988).