[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue before the court is whether the parents and brother of a 31 year old male who hanged himself while in police custody, following his arrest and inability to post bond, can be held even partially responsible for the decedent's suicide.
Plaintiff is the Administrator of the Estate of Mark Janco who, the complaint alleges, committed suicide while in the care, custody and control of the defendants in the afternoon hours of November 27, 1988, by hanging himself in his prison cell. At the time of his death, Mark Janco was 31 years old and was living in Norwalk. He had been arrested for possession of narcotics, possession of narcotics with intent to sell, and possession of narcotics paraphernalia. He was arrested in the, early morning hours of November 26, 1988, a Saturday.
At some time prior to his death, the decedent requested his parents, the cross-defendants Robert and Rita Janco, to post a $5,000 bond. They refused. In the early evening hours of November 26, 1988, Mark Janco's brother Michael was apprised of the plaintiff's decedent's depression and intention to commit suicide, which threat he communicated to the defendant Bardos. CT Page 9909
The cross-complaint alleges, among other things, that Mr. and Mrs. Janco were negligent and/or reckless because they failed to post the bond to bail their adult son who did not live with them out of jail, and they failed "to reassure him, to express their support and to express their affection and love", forcing him to "languish in the Norwalk jail cell thereby intensifying his aforesaid depressed mental state. " (Cross-complaint. Paragraphs 10G and 10I.)
Additionally, defendants have asserted the same claims as special defenses and have also alleged that plaintiff's decedent's brother Michael Janco was somehow responsible for his brother's death. Plaintiff's contention is that there is no legal duty or responsibility on the part of the decedent's parents or his brother, and consequently that the , cross-complaint and the special defenses which are contrary to this position should be stricken.
In an action for negligence the court determines,
 (a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or non-existence of such facts;
 (b) whether such facts give rise to any legal duty on the part of the defendant;
 (c) the standard of conduct required of the defendant by his legal duty;
 (d) whether the defendant has conformed to that standard, in any case in which the jury may not reasonably come to a different conclusion;
 (e) the applicability of any rules of law determining whether the defendant's conduct is a legal cause of harm to the plaintiff; and
 (f) whether the harm claimed to be suffered by the plaintiff is legally compensable.
2 Restatement (2nd) Torts, 328B.
The decision as to whether the law imposes upon the defendant any legal duty to act or to refrain from acting for the protection of the plaintiff is always for the court. Comment on Clause B, p. 153. A determination that the defendant is under CT Page 9910 no legal duty to the plaintiff under Clause (B) will require a decision by the court in favor of the defendant.
The defendants contend that the duty involved herein is the "duty to exercise due care." The cases they cite however involve circumstances totally inapposite. In Hedderman v. Robert Hall of Waterbury, Inc., 145 Conn. 410, 412-413 (1988). The liability arose because of injury resulting from negligence occurring in the course of the performance of a contract. The cited language: "that the duty to exercise reasonable care arises whenever the activities of two persons come so in conjunction that the failure by one to exercise that care is likely to cause injury to the other" was in that context. (Emphasis added.) In Attardo v. Anbriscoe, 147 Conn. 708 (1960) the status of the defendant as a landowner provided the background information upon which the Court looked to his knowledge of the presence of children upon his property, and it was solely against this backdrop that the issue of foreseeability of harm was evaluated. See also Woebel v. Housing Authority, 146 Conn. 197, 200 (1959). ("It is, of course, the duty of a landlord to use reasonable care to keep in a reasonably safe condition the parts of the premises over which he reserves control.")
No case has been provided by the defendants that even suggest that the duty to protect the decedent from himself can derive from a familial relationship per se. Nor has any case been cited by the defendant which abrogates the common law rule that absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another or even oneself. The decedent here was not his parent's ward. He was a 31 year old whose parents had already tried all sorts of ways of treating their son's drug problem — all obviously to I no avail. As a last desperate measure, they chose to take a "tough love" approach.
The recent case Kaminski v. Fairfield, 216 Conn. 29 (1990) addressed this common law principal and saw no reason to deviate from it in light of the facts involved therein. Where the parents of a mentally ill son who had reached the age of majority and who lived with them, became violent, thereby necessitating assistance by the mental health and police departments and where a police officer, in the course of his professional duties, sustained severe injuries by the son the Court held that the claim by the police officer against the parents that they are liable for the acts of their child was properly stricken. The Court held that while "arguably legally designated custodians may (also) have a common law duty to protect foreseeable third parties from their ward's aggressive behavior," the research conducted by the parties, as well as the CT Page 9911 I court, revealed no case to hold that the parties, "merely by making a home for an adult child who is a mental patient," should be held to be "[o]ne who takes charge of a third person" for the purposes of 319[1] of The Restatement 2nd. Kaminski, supra at 35-36. Additionally, the Court held that under the facts of the case there was also no duty to warn the police of a known impending danger. The parents asked for help from the mental health workers and their escorts because of the situation; therefore they had no duty to warn an invitee of something that he already knew about. (Emphasis added.)
The defendants argue that the duty arises out of some foreseeability of harm resulting from a situation. (Defendant's Brief p. 4.) Again, they cite to situations where the duty is clear and the question of foreseeability is in the context of what is sufficient care to meet the standard imposed by law. As 314 of Restatement 2nd states:
 "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Any moral obligation the decedent's family may have felt did not translate into a legal one.
See 314A and comments thereto which list and give examples of the various relations which give rise to the duty to aid or protect. Unless there is something in the relation to carry the duty, there is none.[2] In the absence of any authority provided to establish this duty, the cross complaint and special defenses six and seven are stricken.[3]
KATZ, JUDGE