******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## JUSTIN LUND *v.* MILFORD HOSPITAL, INC.
### (SC 19834)

Rogers, C. J., and Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

The plaintiff, a police officer, brought a negligence action, seeking to recover damages for personal injuries that he sustained while subduing an emotionally disturbed person, P, who had been committed to the defendant hospital's custody on an emergency basis for psychiatric evaluation. Specifically, the plaintiff alleged that P had been transported to the defendant's facilities after exhibiting certain irrational behavior and injuring two other police officers at the scene of an automobile accident. The plaintiff traveled to the defendant's facilities to check on the injured officers and observed that P had been restrained by the defendant's employees. Subsequently, P was allowed to go to the bathroom unaccompanied and unrestrained. Upon exiting the bathroom, P threw an object at the plaintiff and fled. The plaintiff was injured in the course of the pursuit that followed. The defendant filed a motion to strike the original complaint, which the trial court granted, concluding that the plaintiff's claim was barred by the justifications underlying the firefighter's rule, which generally bars firefighters and police officers who enter private property in the exercise of their duties from bringing civil actions against the landowner for injuries caused by defective conditions on the property. The plaintiff then filed a substitute complaint, to which the defendant objected. In sustaining the defendant's objection, the trial court concluded that, despite certain new allegations, the plaintiff had failed to state a claim for which relief could be granted. The trial court subsequently rendered judgment for the defendant, from which the plaintiff appealed. *Held*:

1. This court concluded that the allegations set forth in the plaintiff's substitute complaint were materially different from those in the original complaint, and, therefore, the plaintiff had preserved his right to appeal after repleading; the new and revised factual allegations set forth in the substitute complaint, read in the light most favorable to the plaintiff, constituted a good faith effort to address the trial court's determination that the claims of negligence in the original complaint were barred by the justifications underlying the firefighter's rule insofar as the substitute complaint deemphasized, or eliminated entirely, the plaintiff's role in P's committal.

2. The trial court improperly sustained the defendant's objection to the plaintiff's substitute complaint, this court having concluded that the claims of negligence set forth therein alleged a valid cause of action and, therefore, the trial court's judgment was reversed and the case was remanded for further proceedings; pursuant to this court's decision in *Sepega* v. *DeLaura* (326 Conn.    ), the firefighter's rule does not extend to cases, such as the present case, in which the complaint alleges ordinary negligence rather than premises liability.

(*Two justices dissenting in one opinion*)

Argued February 22—officially released September 26, 2017

*Procedural History*

Action to recover damages for the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Stevens, J.*, granted the defendant's motion to strike the plaintiff's complaint; thereafter, the court, *Stevens, J.*, granted the defendant's objection to the plaintiff's corrected substitute complaint and the defendant's motion for judgment, and rendered judgment thereon for the defendant, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*Jennifer B. Goldstein*, with whom were *Jonathan M. Levine* and, on the brief, *Jeffrey L. Ment*, for the appellant (plaintiff).

*Sherwin M. Yoder*, with whom, on the brief, was *Mariella LaRosa*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The plaintiff, Justin Lund, a Connecticut state trooper, brought this action against the defendant, Milford Hospital, Inc., seeking damages for personal injuries sustained while subduing an emotionally disturbed person, Dale Pariseau, who had been committed to the defendant's custody on an emergency basis for psychiatric evaluation. The plaintiff has alleged that the defendant was negligent in numerous ways, including (1) failing to supervise or restrain Pariseau properly, (2) failing to provide for adequate security in the area where foreseeably dangerous patients are held, (3) allowing Pariseau, who was known to be dangerous, to go to the bathroom unrestrained and unaccompanied, and (4) failing to train its staff properly.

The record contains the following relevant procedural history. The plaintiff filed a substitute complaint[1] pursuant to Practice Book § 10-44[2] after the trial court granted the defendant's motion to strike his original complaint on the ground that the claims set forth therein were barred by "underlying justifications for the [firefighter's] rule . . . ." In sustaining the defendant's objection to the substitute complaint, the trial court concluded that, despite certain new allegations, the plaintiff's pleading failed to state a claim for which relief could be granted because this court's decision in *Kaminski* v. *Fairfield*, 216 Conn. 29, 38–39, 578 A.2d 1048 (1990), is not limited to cases in which a person has actually requested police assistance. The trial court rendered judgment accordingly, and this appeal followed.[3] On appeal, the plaintiff claims primarily that, under this court's subsequent decision in *Levandoski* v. *Cone*, 267 Conn. 651, 841 A.2d 208 (2004), the firefighter's rule does not bar police officers from bringing negligence claims in nonpremises liability cases for injuries suffered during the performance of their duties. The plaintiff also claims that the trial court erred in sustaining the objection to the substitute complaint because the allegations set forth therein were materially different from his original complaint. For the reasons that follow, we reverse the judgement of the trial court and remand the case for further proceedings.

I

The governing legal principles on motions to strike are very well established. "[A]fter a court has granted a motion to strike, [a party] may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as the] filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . Stated another way: When an amended pleading is filed, it operates as a waiver

of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment, and previous rulings on the original pleading cannot be made the subject of appeal." (Citations omitted; internal quotation marks omitted.) *Ed Lally & Associates, Inc.* v. *DSBNC, LLC*, 145 Conn. App. 718, 745–46, 78 A.3d 148, cert. denied, 310 Conn. 958, 82 A.3d 626 (2013); see also *Royce* v. *Westport*, 183 Conn. 177, 178–79, 439 A.2d 298 (1981); *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, 128 Conn. App. 84, 90, 15 A.3d 1163 (2011); *Wilson* v. *Hryniewicz*, 38 Conn. App. 715, 719, 663 A.2d 1073, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).

If the plaintiff elects to replead following the granting of a motion to strike, the defendant may take advantage of this waiver rule by challenging the amended complaint as not "materially different than the [stricken] . . . pleading that the court had determined to be legally insufficient. That is, the issue [on appeal becomes] whether the court properly determined that the plaintiffs had failed to remedy the pleading deficiencies that gave rise to the granting of the motions to strike or, in the alternative, set forth an entirely new cause of action. It is proper for a court to dispose of the substance of a complaint merely repetitive of one to which a demurrer had earlier been sustained." *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 128 Conn. App. 88. "Furthermore, if the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint." Id., 90; see also *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 74, 700 A.2d 655 (1997). In the present case, the defendant argues that, because the two complaints were not materially different, no other issue is properly before the court on appeal, and the plaintiff abandoned any claim of error with respect to the trial court's prior decision striking the original complaint. We disagree. The law in this area requires the court to compare the two complaints to determine whether the amended complaint "advanced the pleadings" by remedying the defects identified by the trial court in granting the earlier motion to strike.[4] *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 88–89. In determining whether the amended pleading is "materially different," we read it in the light most favorable to the plaintiff.[5] See, e.g., *Melfi* v. *Danbury*, 70 Conn. App. 679, 684, 800 A.2d 582, cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002).[6]

Changes in the amended pleading are material if they reflect a "good faith effort to file a complaint that states a cause of action" in a manner responsive to the defects identified by the trial court in its grant of the motion to strike the earlier pleading. *Parsons* v. *United Tech-*

*nologies Corp.*, supra, 243 Conn. 75–76. Factual revisions or additions are necessary; mere rewording that "basically restate[s] the prior allegations" is insufficient to render a complaint new following the granting of a previous motion to strike. *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 128 Conn. App. 89 n.4. The changes in the allegations need not, however, be extensive to be material.

For example, in *Parsons*, the trial court had stricken an earlier wrongful termination count on the ground that the complaint had "fail[ed] to specify a particular 'workplace' or 'place of employment' within Bahrain that was allegedly unsafe. The [trial] court held that the plaintiff's allegation that the entire nation was generally unsafe was insufficient." *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 75. In concluding that the additional facts pleaded in the subsequent complaint "render the allegations sufficiently different from those in the [stricken] complaint to make the waiver rule inapplicable," this court recognized that "the only difference between the two sets of allegations is the addition of the specific location in Bahrain to which the plaintiff was to be sent. This addition, however, addresses the specific defect that the trial court had emphasized in originally striking the plaintiff's wrongful termination claim . . . ." Id., 74–75; see also id., 71 (noting that amendment specified location of " 'Headquarters, Bahrain Defense Force,' " while previously stricken complaint "merely stated that the plaintiff was to be sent to Bahrain"). The court emphasized that, "although the plaintiff's subsequent additions to his factual allegations may have been limited, they can fairly be read as attempting to address the specific problem identified by the trial court in striking the plaintiff's original wrongful termination claim. The plaintiff appears to have made a good faith effort to file a complaint that states a cause of action."[7] (Footnote omitted.) Id., 75–76.

The defendant argues that the trial court properly concluded that the substitute complaint was not materially different from the original complaint and, therefore, properly sustained its objection. We disagree. While the original and substitute complaints at issue in the present appeal contain similar factual allegations and specifications of negligence, there are significant differences that appear to address the trial court's determination that the claims in the original complaint were barred by the justifications underlying the firefighter's rule. In particular, the original complaint alleged that the plaintiff followed the ambulance transporting Pariseau to the defendant's facilities to "*both* . . . check upon the condition of the [police officers] injured by Pariseau incident to his arrest, *and* to attend to the paperwork necessary for Pariseau's emergency committal as a psychiatric patient. To this end, he brought with him Pariseau's effects, specifically the quantities of

psychotropic prescription drugs [found in Pariseau's car] as evidence of the necessity of such committal." (Emphasis added.) The original complaint then alleges that, when the plaintiff arrived at the defendant's facilities, "he first checked on the condition of the injured [police officers], *then he attended to filling out the emergency committal paperwork for Pariseau*. Pursuant to committal, [the defendant] took Pariseau into custody based on the evidence of the clear danger he posed to the public. During this process, [the plaintiff] was shown by [the defendant's employees] that Pariseau was in a holding room under observation, undergoing a full psychiatric evaluation. [The plaintiff] saw that Pariseau had been placed in restraints by [the defendant's employees]." (Emphasis added.)

In granting the defendant's motion to strike the original complaint, the trial court agreed with the plaintiff that this court stated in *Levandoski* v. *Cone*, supra, 267 Conn. 661, that the firefighter's rule itself is limited to premises liability cases. Nevertheless, the court followed Superior Court case law; see, e.g., *Jainchill* v. *Friends of Keney Park*, Superior Court, judicial district of Hartford, Docket No. CV-00-0800130-S (February 28, 2001); implementing the policies underlying the firefighter's rule as expressed in *Kaminski* v. *Fairfield*, supra, 216 Conn. 38–39, and *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 579–81, 717 A.2d 215 (1998), and determined that it precluded liability based on the allegations in the complaint because "the plaintiff was injured while acting in the performance of his duty as a police officer and that the alleged acts of negligence were *intimately connected with the very occasion for which the plaintiff was on the property*." (Emphasis added; internal quotation marks omitted.) The trial court relied on the allegations that the plaintiff had arrested Pariseau and brought him to the defendant's facilities for emergency commitment, at which point the plaintiff became concerned about the defendant's security measures.

The new and revised factual allegations in the substitute complaint are responsive to the memorandum of decision granting the motion to strike insofar as they deemphasize, or eliminate entirely, the plaintiff's role in Pariseau's committal. First, the substitute complaint contains a new paragraph alleging that the plaintiff first proceeded to Bridgeport Hospital "to follow up with [a separate] accident," which had occurred prior to and in the vicinity of Pariseau's accident. See footnote 1 of this opinion. The substitute complaint then alleges that, "[u]pon the completion of his obligations as to the first accident, the plaintiff left Bridgeport Hospital and proceeded to [the defendant's facilities], to check upon the condition of the [police officers] injured by Pariseau incident to his arrest." Notably, the substitute complaint omits the allegation from the original complaint concerning the plaintiff's role in completing the documents necessary for Pariseau's emergency committal. The

substitute complaint further minimizes the plaintiff's role in the committal of Pariseau, alleging that, when the plaintiff arrived at the defendant's facilities, "he first checked on the condition of the [injured police and officers and then] attended to additional paperwork." The substitute complaint then specifically alleges that, "[b]ased upon the actions of Pariseau and the observations of [the injured police officers], an emergency committal was completed for Pariseau pursuant to [General Statutes] § 17a-503 (a)." To this end, the substitute complaint also alleges that the defendant "did not at any time call for or seek or invite in any regard the assistance of the Connecticut state troopers, including but not limited to [the plaintiff]."[8]

Read in the light most favorable to the plaintiff, the allegations set forth in the plaintiff's substitute complaint constitute a "good faith effort" to address the pleading deficiency identified by the trial court in granting the motion to strike the original complaint. *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 75–76. Specifically, the new allegations in the substitute complaint are an attempt to distinguish this case from *Kaminski* v. *Fairfield*, supra, 216 Conn. 31, which held that the parents who allowed their adult schizophrenic son to live with them could not be held vicariously liable for the injuries he inflicted on a policeman, and that they had no duty to warn beyond the initial call. The new allegations seek to disconnect the plaintiff's presence from the emergency committal of Pariseau in an apparent attempt to address the trial court's observation in granting the motion to strike that the defendant's "alleged acts of negligence were intimately connected with the very occasion for which the plaintiff was on the property." (Internal quotation marks omitted.) The new allegations in the substitute complaint, therefore, materially differ from those in the original complaint for purposes of preserving the plaintiff's right to appeal after repleading pursuant to Practice Book § 10-44. Accordingly, we reach the merits of the plaintiff's claims on appeal.

## II

We note that, following this court's decisions in *Kaminski* and *Levandoski*, some trial court judges have continued to apply the firefighter's rule[9] to nonpremises liability claims while others have not. In the present case, the trial court relied on *Jainchill* v. *Friends of Kenney Park*, supra, Superior Court, Docket No. CV-00-0800130-S, which had applied the justifications underlying firefighter's rule to a nonpremises liability claim. In granting the defendant's motion to strike, the trial court in the present case found that "the alleged acts of negligence were 'intimately connected with the very occasion for which the plaintiff was on the property' " because "[s]pecifically, according to the complaint, the plaintiff knew about Pariseau's violent and

unstable emotional condition because the plaintiff had arrested him and brought him to the hospital."

In response, the plaintiff added multiple new allegations to clarify the circumstances under which the plaintiff had gone to the defendant's facilities and certain other facts on which the trial court had previously relied. Specifically, the substitute complaint alleged that (1) the plaintiff had been on duty on Interstate 95 in connection with an entirely unrelated accident before encountering Pariseau, (2) the plaintiff had traveled to Bridgeport Hospital in connection with his duties relating to the other accident before traveling to the defendant's facilities, (3) the plaintiff had traveled to the defendant's facilities in order to check on the police officers who had arrested Pariseau and to complete additional paperwork, (4) Pariseau was brought to the defendant's facilities by an ambulance, not by the plaintiff, and (5) the defendant had accepted custody of Pariseau, in its institutional capacity, as a professional custodian with a degree of special competence.

In sustaining the defendant's objection to the substitute complaint, the trial court held that the defendant's negligent act was " 'intimately connected' with the very reason . . . the plaintiff . . . acted to apprehend Pariseau when he attempted to escape" and that "the plaintiff was injured while acting in the performance of his duty as a police officer . . . ."[10] In reaching its conclusion, the trial court again cited *Jainchill* and *Kaminski*. As this court has recently clarified in *Sepega* v. *DeLaura*, 326 Conn.    ,    A.3d    (2017), however, the firefighter's rule does not extend beyond claims of premises liability. In *Sepega*, this court also distinguished *Kaminski* as a case that was primarily concerned with vicarious liability of parents and an independent duty to warn. Id.,    . Accordingly, we conclude that the trial court's decision to sustain the defendant's objection to the substitute complaint in the present case was improper because the plaintiff had alleged a valid cause of action. As a result, the trial court's subsequent judgment in favor of the defendant must be reversed in light of this court's decision in *Sepega*.[11]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion ROGERS, C. J., and ESPINOSA, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] The substitute complaint alleges the following underlying facts. Pariseau had been transported to the defendant's facilities and committed for psychiatric observation following certain violent and irrational behavior—including attacks that injured two police officers—at the scene of an automobile accident on Interstate 95. The plaintiff, who had been attending to an earlier accident nearby and had assisted in Pariseau's arrest, subsequently traveled to the defendant's facilities to check on the condition of the injured police officers. The defendant did not "at any time" ask for the assistance of any police officer, including the plaintiff, with regard to Pariseau. In the process

of checking on the injured police officers, the defendant's employees showed the plaintiff that Pariseau was being restrained under observation while undergoing a full psychiatric evaluation. The plaintiff relied on the representations of the defendant's employees that Pariseau had been properly secured and restrained.

Shortly before leaving, the plaintiff noticed that Pariseau was no longer in his room. The plaintiff asked where Pariseau had gone, and a nurse indicated that he had gone unaccompanied and unrestrained into the bathroom behind the nurse's station to change into a hospital gown. The plaintiff then knocked on the locked bathroom door, heard water running in the sink, and asked Pariseau to unlock the door. Pariseau asked for more time in the bathroom, with the water still running. After ten minutes, Pariseau flung open the door and ran out, hurling a garbage can that was filled with a mix of hot water and his own urine at the plaintiff, another police officer, and two nurses. The plaintiff, after slipping and falling in the mix of urine and water on the floor, caught up with Pariseau and, with the assistance of others, subdued him. In the course of these events, the plaintiff sustained injuries to his head, shoulder, elbow, wrist, and hand.

[2] Practice Book § 10-44 provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. Nothing in this section shall dispense with the requirements of Sections 61-3 or 61-4 of the appellate rules."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] "An example of a proper pleading filed pursuant to Practice Book § 10-44 is one that [supplies] the essential allegation lacking in the complaint that was stricken." (Internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 878, 89 A.3d 358 (2014). It may not assert an entirely new cause of action premised on a legal theory not previously asserted in the stricken complaint, which would require permission under Practice Book § 10-60 (a). See also id., 878–79 (substitute complaint asserting new legal theories was not proper because it did not correct deficiencies identified in previous decision granting motion to strike, which was grounded on fact that "Rules of Professional Conduct do not give rise to a private cause of action," and, thus, "there was no essential allegation or any other correction to be added that would have made the stricken count legally sufficient" [internal quotation marks omitted]).

[5] Subsequent appellate review of this comparative process is plenary because it considers the trial court's interpretation of the pleadings. See, e.g., *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 128 Conn. App. 88.

[6] We note that the defendant's arguments regarding this issue may be premised on a misunderstanding of the trial court's memorandum of decision. Specifically, the introduction to the trial court's decision sustaining the defendant's objection to the substitute complaint states generally that the court "agrees" with the defendant's arguments "that the allegations of the substitute complaint are insufficient to cure the legal deficiencies of the earlier pleading. The defendant requests that its objection be sustained and that judgment enter in its favor based on the plaintiff's failure to file an adequate substitute pleading in response to the order granting the motion to strike. See Practice Book § 10-44." Acknowledging the changes made to the allegations in the substitute complaint, the trial court nevertheless concluded that the "substantive allegations of the substitute complaint describing the circumstances of the plaintiff's injur[ies] remain essentially the same as those of the original complaint." The trial court's analysis does *not*, however, specifically conclude that the substitute complaint lacked "materially different" allegations; see *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 128 Conn. App. 88; rather, the trial court went on to reach the merits of the plaintiff's claim, concluding that, in light of the factual allegations made in the substitute complaint, the justifications underlying the firefighter's rule barred the plaintiff's cause of action. Specifically, the trial court concluded that the plaintiff's substitute complaint continued to allege that "the defendant's negligence precipitated the very reason for his

involvement" and rejected "the plaintiff's argument that the . . . holding in *Kaminski* . . . should be applied only in situations where a person actually requests police assistance." Following *Jainchill* v. *Friends of Keney Park*, Superior Court, judicial district of Hartford, Docket No. CV-00-0800130-S (February 28, 2001), the trial court in the present case reiterated that "there is no question that the alleged acts of negligence . . . were 'intimately connected' with the very reason why the plaintiff became involved with Pariseau and why he acted to apprehend Pariseau when he attempted to escape. Specifically, the plaintiff engaged Pariseau precisely because he was concerned about the level of the [defendant's] control or supervision of Pariseau. Furthermore, the plaintiff was injured while acting in the performance of his duty as a police officer to apprehend a dangerous, fleeing individual and to protect other people from this potential danger."

[7] A comparison of other cases is helpful to illustrate those amendments that rise to the level of "materially different" for purposes of avoiding the waiver rule. Compare *Alexander* v. *Commissioner of Administrative Services*, 86 Conn. App. 677, 683, 862 A.2d 851 (2004) ("new allegations [in amended complaint] that transformed [the] previous, generic equal protection claim into a colorable claim of selective enforcement . . . differ materially from the equal protection allegation contained in [the] original complaint"), *Emerick* v. *Kuhn*, 52 Conn. App. 724, 734, 737 A.2d 456 (adding statutory and constitutional references, even if inapposite, "may be read as attempting to address the legal insufficiency specifically identified by the trial court . . . making the count materially different," and, therefore, plaintiff had not "waived his right to appeal from the striking"), cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999), and *Doe* v. *Marselle*, 38 Conn. App. 360, 364–65, 660 A.2d 871 (1995) (reaching "merits of the plaintiff's argument that she has pleaded wilful conduct" in amended complaint because, "[d]espite this inexplicable continued absence of the word wilful, her next pleading contained additional language with which she argues that wilful conduct may be inferred," which constituted "a good faith effort to file a complaint that states a cause of action"), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996), with *St. Denis* v. *de Toledo*, 90 Conn. App. 690, 695–96, 879 A.2d 503 (reiteration of facts, without satisfying defect by providing content of confidential information gained by defendant during attorney-client relationship, did not constitute "materially different" complaint), cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005), *Ross* v. *Forzani*, 88 Conn. App. 365, 369–70, 869 A.2d 682 (2005) (waiver rule applicable when original complaint alleged that " 'the defendant deposed the plaintiff and . . . used against the plaintiff at said deposition confidential information [previously] disclosed by the plaintiff to the defendant's law firm,' " and amended complaint "simply restated the original allegations, now stating that '[i]n representing [the plaintiff's wife] in the dissolution of her marriage to the plaintiff, after having represented the plaintiff in the same matter, the defendant used to the plaintiff's disadvantage privileged information obtained as a result of his prior representation of the plaintiff' "), and *Parker* v. *Ginsburg Development CT*, *LLC*, 85 Conn. App. 777, 780 n.2, 859 A.2d 46 (2004) ("[T]he plaintiff attempted to amend the complaint by emphasizing that he had been promised employment until a certain time and omitted the language regarding the number of houses contemplated to be sold per year. These changes are not material. Furthermore, substituting the phrase 'explicitly told' for 'promised without ambiguity' does not change the plaintiff's status as an at-will employee, which was the basis of the trial court's decision to strike the complaint. In both the original and substitute complaints, the two phrases mean the same thing.").

[8] The plaintiff also added new allegations to the substitute complaint concerning the defendant's duty. The substitute complaint emphasized that the plaintiff "at no time assumed a duty as a public servant to protect a mentally compromised individual" and that the plaintiff had acted under an assumption that, following Pariseau's committal, the defendant and its employees "would perform to the reasonable standards inherent in their duty as professional custodians so as not to risk the safety and well-being of others." The plaintiff also added numerous allegations emphasizing the defendant's special competence and relationship of custody and control over Pariseau in light of the emergency committal under § 17a-503 (a).

We note that the substitute complaint also contains certain immaterial differences, namely, an allegation that the plaintiff walked from the first accident on Interstate 95 to a second accident involving Pariseau. See footnote 1 of this opinion. Likewise, the substitute complaint also provides greater detail about the plaintiff's injuries.

[9] The common-law firefighter's rule provides, in general terms, that a firefighter or police officer who enters private property in the exercise of his or her duties cannot bring a civil action against the property owner for injuries sustained as the result of a defect in the premises. See *Levandoski* v. *Cone*, supra, 267 Conn. 653–54. We note that a full discussion of the policies underlying the firefighter's rule and its limitation to premises liability claims is set forth in *Sepega* v. *DeLaura*, 326 Conn. , A.3d (2017).

[10] We note that this language, which is different from that used by the trial court in granting the motion to strike, appears to dispense with any requirement of antecedent negligence on the property and, thereby, would provide immunity to a defendant whenever there is any negligence that triggers a response by a public safety officer in the performance of his or her official duties. This test would convert the firefighter's rule into an outright ban on any claim by a public safety officer who was injured through the negligence of a third party while on duty. For the reasons stated in *Sepega* v. *DeLaura*, 326 Conn. , A.3d (2017), such an expansion is unwarranted.

[11] The plaintiff has requested that we recognize § 319 of the Restatement (Second) of Torts. In view of our decision that the substitute complaint stated a valid cause of action, it is unnecessary for us to reach that issue.